**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: September 29, 2016.**

_____
**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 15-51396-CAG |
| | § | |
| PRIMERA ENERGY, LLC, | § | CHAPTER 11 |
|     Debtor. | § | |
| | § | |
| FREDERICK PATEK, et al., | § | |
|     Plaintiffs, | § | ADVERSARY NO. 15-05047-CAG |
| | § | |
| V. | § | |
| | § | |
| BRIAN K. ALFARO; | § | |
| PRIMERA ENERGY, LLC; | § | |
| ALFARO OIL AND GAS, LLC; | § | |
| ALFARO ENERGY, LLC; | § | |
| KING MINERALS, LLC; | § | |
| SILVER STAR RESOURCES, LLC; | § | |
| 430 ASSETS, LLC, A MONTANA LLC; | § | |
| KRISTI MICHELLE ALFARO; | § | |
| BRIAN AND KRISTI ALFARO, AS | § | |
| TRUSTEES OF THE BRIAN AND | § | |
| KRISTI ALFARO LIVING TRUST; and | § | |
| ANA AND AVERY'S CANDY | § | |
| ISLAND, LLC, | § | |
|     Defendants. | § | |

### ORDER GRANTING, IN PART, AND DENYING, IN PART, DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FOURTH AMENDED COMPLAINT PURSUANT TO

1

## RULE 12(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE AS MADE APPLICABLE TO ADVERSARY PROCEEDINGS UNDER RULE 7012 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (ECF NO. 128)

Came on for consideration Defendants' Motion to Dismiss Plaintiffs' Fourth Amended Complaint Pursuant to Rule 12(b) of the Federal Rules of Civil Procedure as Made Applicable to Adversary Proceedings Under Rule 7012 of the Federal Rules of Bankruptcy Procedure (ECF No. 128)[1] ("Motion to Dismiss"). Defendants also filed a Memorandum of Law in Support of the Motion to Dismiss (ECF No. 131)[2], and Plaintiffs filed a Response to the Motion to Dismiss on April 8, 2016 (ECF No. 141). The Court took the matter under advisement without necessity of a hearing.

### PROCEDURAL BACKGROUND

Plaintiffs commenced this action by filing their lawsuit styled *Frederick Patek, Geraldine Patek, Jim Gregory, Cal Curtner, Lisa Simpson, Jasper Campise, Karen Smith, William Crawford, Mike Covington, Marc Keese, Mike McPherson, Ed McPherson, Wesley Crow, Dieter Jansen, Quackenbush Petroleum, James Reiley, Betty Reiley, Rick Reiley, Greg Shilts and Jana Shilts and on behalf of All Other Similarly Situated Investors of Defendants' "Screaming Eagle," "Montague Legacy" and "Buda Well" Investments vs. Brian K. Alfaro, Primera Energy, LLC, Alfaro Oil and Gas, LLC and Alfaro Energy, LLC*, in the 288th District Court for Bexar County on April 24, 2015 (the "State Court Action").

In the State Court Action, Plaintiffs sought and obtained a temporary restraining order ("TRO") against Brian Alfaro ("Alfaro"), Primera Energy, LLC ("Primera"), Alfaro Oil and Gas,

---

[1] Unless otherwise noted, all references to "ECF No." shall refer to documents filed on the docket for Adversary Case No. 15-05047-cag.
[2] Defendants Brian K. Alfaro; King Minerals, L.L.C.; Silver Star Resources, L.L.C.; 430 Assets, LLC; Kristi Michelle Alfaro; Brian and Kristi Alfaro Living Trust; and Ana and Averys Candy Island, LLC jointly filed the Motion to Dismiss. Defendants Primera Energy, LLC; Alfaro Oil and Gas, LLC; and Alfaro Energy, LLC are subject to receivership and have not moved for dismissal.

LLC and Alfaro Energy, LLC on April 28, 2015.  The TRO expired on May 12, 2015, and on May 19, 2015, Plaintiffs filed a motion to extend the TRO.  On May 22, 2015, the TRO was extended to June 1, 2015.  On June 2, 2015, the state court judge entered a temporary injunction against Defendants Alfaro, Primera, Alfaro Oil and Gas, LLC and Alfaro Energy, LLC.

On June 3, 2015, Primera filed for relief under Title 11 of the U.S. Code commencing Bankruptcy Case No. 15-51396 (the "Bankruptcy Case").  On June 19, 2015, Alfaro, Primera, Alfaro Oil and Gas, LLC, Alfaro Energy, LLC, King Minerals, LLC and Silver Star Resources, LLC removed the State Court Action to this Court, commencing this Adversary Proceeding No. 15-05047 (the "Adversary").  Also on June 19, 2015, Plaintiffs filed their Second Amended Petition in the State Court Action adding King Minerals, LLC and Silver Star Resources, LLC as Defendants.

On July 13, 2015, Jason Searcy was appointed chapter 11 trustee for the estate of Primera in the Bankruptcy Case.  On August 14, 2015, Plaintiffs filed their Third Amended Complaint (ECF No. 29) in this Adversary.  Plaintiffs added the following Defendants in their Third Amended Complaint: 430 Assets, LLC; Kristi Michelle Alfaro; Brian Alfaro and Kristi Alfaro, as trustees for the Brian and Kristi Alfaro Living Trust; and Ana and Averys Candy Island, LLC. On December 8, 2015, Defendants filed a Motion to Dismiss the Third Amended Complaint (ECF No. 109).  Thereafter, on January 28, 2016, Plaintiffs sought leave of this Court to file a Fourth Amended Complaint (ECF No. 115), and filed their Response to Defendants' Motion to Dismiss Third Amended Complaint (ECF No. 116).  At a hearing held February 23, 2016, the Court granted Plaintiffs' request for leave to file a Fourth Amended Complaint and permitted Defendants to file a second Motion to Dismiss in response to the new complaint.

Although Plaintiffs attached their Fourth Amended Complaint to their Motion for Leave

to File Fourth Amended Complaint (ECF No. 115), they mistakenly did not re-file the complaint on the docket until March 21, 2016 (ECF No. 133). Nonetheless, Defendants filed their new Motion to Dismiss timely on March 18, 2016 (ECF No. 128), to which Plaintiffs filed a Response on April 8, 2016 (ECF No. 141). This Court elected to take the matter under advisement without necessity of a hearing and shall now rule on the moving papers.

## MOTION TO DISMISS STANDARD

### I.     Pleading Standards

When considering a motion to dismiss for failure to state a claim, the court must "accept all well-pleaded facts as true and view all facts in the light most favorable to the plaintiff." *Thompson v. City of Waco, Texas*, 764 F.3d 500, 502-03 (5th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "To survive dismissal, a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 570 (holding complaint must allege enough facts to move the claim "across the line from conceivable to plausible").

The determination of whether the plausibility standard has been met is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *see also Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (en banc) ("Our task, then, is to determine whether the plaintiff stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success."). Motions to dismiss under Fed. R. Civ. P. 12(b)(6) are "viewed with

disfavor and [are] rarely granted." ***Leal v. McHugh***, 731 F.3d 405, 410 (5th Cir. 2013) (citing ***Turner v. Pleasant***, 663 F.3d 770, 775 (5th Cir. 2011)).

Federal Rule of Civil Procedure 8(a), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7008, provides:

> A pleading that states a claim for relief must contain:
>
> > (1) a short and plain statement of the grounds for this court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
> >
> > (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
> >
> > (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a). "Although the rule encourages brevity, the complaint must say enough to give the defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" ***Tellabs, Inc. v. Makor Issues & Rights, Ltd.***, 551 U.S. 308, 319 (2007) (quoting ***Dura Pharmaceuticals v. Braudo***, 544 U.S. 336, 346 (2005)).

Moreover, where fraud or mistake is alleged in the pleadings, Federal Rule of Civil Procedure 9(b), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7009, requires the pleading meet a heightened standard. The rule states:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed. R. Civ. P. 9(b). Rule 9(b)'s heightened pleading requirement, "stands as an exception to an overarching policy of immediate access to discovery." ***Williams v. WMX Techs., Inc.***, 112 F.3d 175, 178 (5th Cir. 1997). Rather, plaintiffs alleging fraud or mistake must lay out the "who, what, when and where" in their pleading before gaining access to the discovery process. ***Id.*** The

heightened pleading standard of Rule 9(b), however, is not a subscription to fact pleading but requires only "simple, concise, and direct allegations of the 'circumstances constituting fraud,' which after *Twombly* must make relief plausible, not merely conceivable, when taken as true." **U.S. ex rel. Grubbs v. Kanneganti**, 565 F.3d 180, 186 (5th Cir. 2009) (quoting **Williams**, 112 F.3d at 178).

## II.     Ponzi Scheme Presumption

Plaintiffs raise the argument that allegations of a Ponzi scheme are sufficient to create a presumption which simplifies the burden of proof to obtain a finding of actual fraud by requiring the pleader to simply show that the defendant was engaged in a Ponzi scheme.  Plaintiffs cite to **Janvey v. Brown**, 767 F.3d 430 (5th Cir. 2014), **Janvey v. Alguire**, 647 F.3d 585 (5th Cir. 2011), and **Warfield v. Byron**, 436 F.3d 551 (5th Cir. 2006), to support their argument that the Fifth Circuit applies the Ponzi scheme presumption to simplify the standard of pleading where involvement in a Ponzi scheme is alleged.  Plaintiffs' argument, however, misunderstands the context and procedural position in which the Fifth Circuit has applied the Ponzi scheme presumption.

In **Brown**, the court appointed a receiver in an SEC-initiated civil suit against a principal, along with his agents and entities, which were determined to have perpetrated a Ponzi scheme. 767 F.3d at 433.  The receiver brought numerous fraudulent transfer claims against those investors who profited from the scheme as "net winners" by virtue of the timing of their withdrawals.  *Id.* at 433-34.  In addressing the merits of the district court's grant of summary judgment in favor of the receiver, the Fifth Circuit Court of Appeals stated:

> In this circuit, proving that [a transferor] operated as a Ponzi scheme establishes the fraudulent intent behind the transfers made.  This is because the transferees' knowing participation is irrelevant under the statute for purposes of establishing

the premise of (as opposed to liability for) a fraudulent transfer[;] instead the statute requires only a finding of fraudulent intent on the part of the debtor[.]

*Id.* at 439 (citations omitted).  Thus, the court of appeals held that the Texas Uniform Fraudulent Transfer Act's intent requirement that the "debtor *transferor* make the transfer with actual intent to . . . defraud any creditor of the debtor" is satisfied where a Ponzi scheme has been established. *Id.*  The fact scenario in *Warfield* is much the same in that the Fifth Circuit affirmed a grant of summary judgment holding fraudulent intent could be implied where the transferor operated as a Ponzi scheme.  436 F.3d at 558-59.

In *Alguire*, the Fifth Circuit heard an interlocutory appeal of a preliminary injunction freezing the assets of former financial advisors and employees of the same company involved in the *Brown* appeal.  647 F.3d at 589.  The preliminary injunction involved a determination that the company had operated as a Ponzi scheme.  At appeal, the Fifth Circuit held that the district court did not abuse its discretion in finding a likelihood of success on the merits for the trustee's claim that a Ponzi scheme occurred.  *Id.* at 596-97.

Here, the Court is placed in a different procedural stance than the three cases cited to and relied upon by Plaintiffs.  Plaintiffs urge this Court to deny the Motion to Dismiss wholesale because Plaintiffs argue that they have alleged a Ponzi scheme—thereby simplifying the pleading standards for actual fraud.  The Court, however, finds that, when considering a Motion to Dismiss under Rule 12(b)(6) for failure to state a claim, the fact that Plaintiffs argue a Ponzi scheme presumption does not lessen this Court's duty to review the allegations of the complaint on each cause of action to determine whether the applicable pleading standards have been met.  That is, the Court must first determine whether the Plaintiffs have adequately pled the existence of a Ponzi scheme in this case.  If Plaintiffs' have adequately pled a Ponzi scheme, then the Court may consider the presumption in causes of action where the presumption would satisfy the

fraudulent intent element. The Ponzi scheme presumption, however, does not automatically supplant the element of intent in all causes of action and does not create an overarching lessened standard of pleading required of the complaint, as Plaintiffs' Response suggests.

The Fifth Circuit Court of Appeals provided the following definition for a Ponzi scheme in *Alguire*:

> A Ponzi scheme is a 'fraudulent investment scheme in which money contributed by later investors generates artificially high dividends or returns for the original investors, whose example attracts even larger investments.

*Alguire*, 647 F.3d at 597 (quoting BLACK'S LAW DICTIONARY 1198 (8th Ed. 2004) and citing *U.S. v. Setser*, 568 F.3d 482, 486 (5th Cir. 2009) ("[I]n a classic Ponzi scheme, as new investments [come] in . . . , some of the new money [is] used to pay earlier investors.")). The Fifth Circuit Court of Appeals also referred to the Second Circuit's description of a Ponzi scheme:

> A [P]onzi scheme is a scheme whereby a corporation operates and continues to operate at a loss. The corporation gives the appearance of being profitable by obtaining new investors and using those investments to pay for the high premiums promised to earlier investors. The effect of such a scheme is to put the corporation farther and farther into debt by incurring more and more liability and to give the corporation the false appearance of profitability in order to obtain new investors.

*Id.* (quoting *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1088 n.3 (2d Cir. 1995)).

The Court reviewed Plaintiffs' Fourth Amended Complaint in detail and finds that Plaintiffs have not adequately alleged the facts necessary to support a finding that a Ponzi scheme occurred in this case. Plaintiffs make numerous and detailed allegations that Defendants procured investments from investors which were used to fund Mr. Alfaro's lifestyle and the expenses incurred on previous wells. That is, Plaintiffs have alleged that investments made for a specific well were used to pay the operating costs, expenses, and vendors for wells other than the

well which the investment was designated to benefit. Plaintiffs, however, have not alleged in their Complaint that any investments were used to pay or to generate artificially high dividends or returns to earlier investors. In fact, Plaintiffs' Complaint barely mentions the existence of any dividends or returns being paid to investors at all—from later-procured investments or otherwise. *Compare with* **In re Juliet Homes, LP,** 2011 WL 6817928, \*12-13 (Bankr. S.D. Tex. 2011) (finding that trustee alleged debtor had "little legitimate business and that investors received a rate of return that was not financially feasible" and funds "received from investors were commingled among the Juliet entities and used, among other things, to pay earlier investors"). For this reason, the Court finds that Plaintiffs have not adequately alleged the existence of a Ponzi scheme in their Complaint. Therefore, the Court will not utilize a Ponzi scheme presumption in its analysis of Plaintiffs' alleged causes of action.

**ANALYSIS OF PLAINTIFFS' CAUSES OF ACTION**

## I.      Common Law Fraud

In order to state a claim for common law fraud in Texas, Plaintiffs must plead: (1) Defendants made a material representation that was false; (2) Defendants knew that the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) Defendants intended to induce Plaintiffs to act upon the representation; and (4) Plaintiffs actually and justifiably relied upon the representation and thereby suffered injury. ***Texas Architectural Aggregate, Inc. v. ACM-Texas, LLC (In re ACM-Texas, Inc.)***, 430 B.R. 371, 410 (Bankr. W.D. Tex. 2010) (citing ***Ernst & Young, LLP v. Pacific Mut. Life Ins. Co.***, 51 S.W.3d 573, 577 (Tex. 2001)).

Defendants argue that Plaintiffs' fraud claim fails as a matter of law because: (1) Plaintiffs are unable to establish reliance; and (2) Plaintiffs failed to meet the heightened

pleading standard of Fed. R. Civ. P. 9(b). Specifically, Defendants argue that Plaintiffs did not identify with specificity which of the Defendants allegedly made representations and to which Plaintiffs those representations were made. The Court will address each element of fraud and the sufficiency of Plaintiffs' pleading regarding that element in turn.

First, Plaintiffs must plead that Defendants made a material representation that was false. ***Texas Architectural***, 430 B.R. at 410. In their Complaint, Plaintiffs allege that Alfaro and the Alfaro Entities—or their employees on the entity's behalf—made false representations and omissions in at least 38 specific instances (ECF No. 133, ¶ 96). Although Defendants argue that the allegation that Alfaro and the Alfaro entities were the parties making the false representations is not specific enough to satisfy Fed. R. Civ. P. 9(b), this Court finds that the Complaint's denominations of both Alfaro and the Alfaro entities—defined as Primera Energy, LLC, Alfaro Oil and Gas, LLC, and Alfaro Energy, LLC—are specific recitations of those Defendants which Plaintiffs allege made the false representations.[3] This Court understands Plaintiffs' Complaint to allege that Alfaro personally made the false representations and that each of the Alfaro entities also made the false representations as institutions, by and through their employees. The allegations of the specific misrepresentations made are too voluminous for this Court to recount individually in this Order; however, the Court does find that the allegations contained in ¶ 96 of the Complaint satisfy the specificity standards for pleading the first element of fraud under Fed. R. Civ. P. 8 and 9(b).

---

[3] Defendants argue that the other named Defendants—King Minerals, LLC; Silver Star Resources, LLC; 430 Assets, LLC; Kristi Alfaro; the Brian and Kristi Alfaro Living Trust; and Ana and Averys Candy Island, LLC ("Other Defendants")—should be dismissed from Plaintiffs' fraud claims because those Other Defendants are not plead with specificity to have made any representations. The Court agrees with Defendants' statement but declines to dismiss the Other Defendants from the Complaint in its entirety. Rather, the Court is of the opinion that Plaintiffs have simply not alleged fraud against the Other Defendants and there are no claims to dismiss with respect to this count.

Second, Plaintiffs must plead that Defendants knew that the representations were false or make it recklessly as a positive assertion without any knowledge of its truth. *Id.* For a statement to be reckless it must be made by a person (1) without any knowledge of the truth; (2) who knows that he does not have sufficient information to support the statement; or (3) who realizes he does not know whether the statement is true. *Id.* (citing *Johnson & Higgins of Tex., Inc. v. Kenneco Energy*, 962 S.W.2d 507, 527 (Tex. 1998)). Here, Plaintiffs have sufficiently and specifically alleged that Alfaro knew representations were false when he made them to potential investors. In fact, Plaintiffs allege that Alfaro reviewed the books and status of accounts daily with the Alfaro entities' accountant so that he would have up to date knowledge of whether representations regarding the health of the business and the disposition of incoming investments. Additionally, Plaintiffs have sufficiently alleged that the Alfaro entities (through Alfaro and their employees) made statements which were, in the least, reckless as a positive assertion without any knowledge of its truth or even patently false, as such representations are alleged to have been directed by Alfaro.

Third, Plaintiffs must plead that Defendants intended to induce Plaintiffs to act upon the representations. *Id.* The Court finds that Plaintiffs have sufficiently and specifically alleged Defendants' intent to induce Plaintiffs to initially invest and continue investing in the Alfaro entities. In numerous ways, Plaintiffs' Complaint contains allegations of Alfaro soliciting investors and the Alfaro entities (by their employees and Alfaro) soliciting investors. The purpose of active solicitation and making those allegedly false and reckless representations could only have been to convince Plaintiffs to invest. Thus, Plaintiffs have adequately alleged that Defendants' actions and alleged misrepresentations were done with intent to induce Plaintiffs' action based on those representations.

11

Lastly, Plaintiffs must plead that they actually and justifiably relied upon the representations and thereby suffered injury. *Id.* Defendants argue that Plaintiffs cannot allege reliance on representations outside of those representations which are included in the Private Placement Memoranda ("PPMs") because Plaintiffs contractually promised not to rely on extra-contractual statements. In support of this position, Defendants cite this Court to *Forest Oil Corp. v. McAllan*, 268 S.W.3d 51, 56 (Tex. 2008), for the proposition that Texas law holds that a disclaimer of reliance upon representations, where the parties' intent is clear and specific, is effective to negate the element of reliance. *See also Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171 (Tex. 1997).

Defendants' argument, however, is premature. The Texas Supreme Court in *Forest Oil* did hold that a waiver of reliance provision could be binding on parties in fraudulent inducement claims under certain facts. 268 S.W.3d at 60. The court, however, also held that "[c]ourts must always examine the contract itself and the totality of the surrounding circumstances when determining if a waiver-of-reliance provision is binding." *Id.* The court then went on to clarify which facts were most relevant when determining whether the waiver-of-reliance provision is binding:

> [W]e now clarify those [facts] that guided our reasoning [in *Schlumberger*]: (1) the terms of the contract were negotiated, rather than boilerplate, and during negotiations the parties specifically discussed the issue which has become the topic of the subsequent dispute; (2) the complaining party was represented by counsel; (3) the parties dealt with each other in an arm's length transaction; (4) the parties were knowledgeable in business matters; and (5) the release language was clear.

*Id.* (citing *Schlumberger*, 959 S.W.2d at 179). At the motion to dismiss stage, the Court must accept all well-plead allegations as true and view all facts in the light most favorable to Plaintiffs. *Iqbal*, 556 U.S. at 678. Here, we must accept as true Plaintiffs' allegations that

12

Defendants induced, by false or reckless representations, Plaintiffs to sign the PPMs and make the investments into the Alfaro entities.  Plaintiffs allege that every stage of convincing them to invest and sign the PPMs was wrought with false or misleading representations and information and that agreement to the waiver-of-reliance provision itself was procured by fraud.  In accepting all that as true, the Court is unable to examine the contract itself and the totality of the surrounding circumstances, at this stage in the proceeding.  For this reason, the Court finds that Plaintiffs adequately and specifically pled actual and justifiable reliance on Defendants' alleged false representations.  Further, Plaintiffs have adequately and specifically pled injury by loss of their investments and requirement of investor contribution for overage claims pertaining to the individual wells.

In an additional objection to Plaintiffs' fraud claims, Defendants argue that Plaintiffs' claim of fraudulent inducement regarding inducement to sign the subscription agreements must be dismissed because Plaintiffs did not plead any misrepresentation made by any of the Defendants prior to execution of the agreements.  A fraudulent inducement claim is essentially a special type of fraud claim.  *See **In re Merit Bank, N.A.***, 52 S.W.3d 749, 758 (Tex. 2001) (listing elements which are identical to a normal fraud claim).  The distinction in a fraudulent inducement claim is the requirement of existence of a contract or binding agreement of the parties.  ***Haase v. Glazner***, 62 S.W.3d 795, 798 (Tex. 2001).  Here, the contract or binding agreement of the parties which Plaintiffs' claim is the result of fraudulent inducement is the subscription agreement or PPM.

Upon review of the Complaint, the Court finds that Plaintiffs have alleged with specificity misrepresentations intended to induce Plaintiffs to agree to the subscription agreements.  Those alleged misrepresentations include—among others—telling investors they

would receive their money back in nine months with a return of multiple times their investment; reciting false numbers from other wells; and referring investors to significantly producing wells as being in the proximity to the proposed well when they were not.  For these reasons, the Court finds that Defendants' request to dismiss Plaintiffs' claims for fraud and fraud in the inducement should be denied.

## II.    Texas Uniform Fraudulent Transfer Act Claims

The Texas Uniform Fraudulent Transfer Act ("TUFTA"), Tex. Bus. & Comm. Code §§ 24.001 *et seq.*, is intended "to prevent debtors from prejudicing creditors by improperly moving assets beyond their reach."  *Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 566 (Tex. 2016) (citing *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 89 (Tex. 2015) ("[TUFTA] is designed to protect creditors from being defrauded or left without recourse due to the actions of unscrupulous debtors.")).  The Texas Supreme recently stated that "[u]nder TUFTA, a transfer made with actual or constructive intent to defraud any creditor may be avoided to the extent necessary to satisfy the creditor's claims:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer or incurred the obligation:

(1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor"

(A) was engaged or was about to engage in a business transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

*Golf Channel*, 487 S.W.3d at 566 (quoting Tex. Bus. & Comm. Code § 24.005(a); *accord id.* § 25.006(a) (transfer is fraudulent as to present creditor if debtor is insolvent or made insolvent by a transfer and debtor did not receive reasonably equivalent value); *see also id.* § 24.008 (creditor remedies for fraudulent transfer)).

First, Defendants argue that Plaintiffs cannot establish their claim for fraud and therefore, do not qualify as tort claimants under TUFTA. The Court finds that, although a Ponzi scheme has not been adequately plead, Plaintiffs claims for fraud have been sufficiently plead to withstand Defendant's Motion to Dismiss. Texas Business and Commerce Code § 24.002 defines a "claim" as "a right to payment or property, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." Plaintiffs allege that they currently have an unliquidated right to payment or property as tort claimants pursuant to their fraud claims, which this Court has declined to dismiss. As such, Plaintiffs continue to qualify as claimants under TUFTA.

Second, Defendants argue that Plaintiffs have not met the heightened pleading standard required by Fed. R. Civ. P. 9(b) for fraud claims in pleading their TUFTA claims. Specifically, Defendants argue that Plaintiffs' Complaint only alleges "upon information and belief" that property and funds were transferred by Alfaro and the Alfaro Entities to the Other Defendants. Thus, Defendants argue that simply alleging fraud based upon information and belief is insufficient to withstand Fed. R. Civ. P. 9(b) and cites to ***Romani v. Shearson Lehman Hutton***, 929 F.2d 875, 878 (1st Cir. 1991), for this proposition. While this Court agrees that allegations of fraud are subject to a heightened pleading standard so that allegations "upon information and belief only" would be insufficient, the Court finds that Plaintiffs allegations regarding transfers of property are spelled out specifically. *See **Kreway v. Countrywide Bank, FSB***, 647 Fed.

App'x. 437, 437-38 (5th Cir. 2016) (mere statement of "upon information and belief, and/or information reasonably expected to be discovered during this litigation" was insufficient to meet the pleading requirements of Fed. R. Civ. P. 9(b)).

Here, Plaintiffs' Complaint ¶ 94 incorporates all of the foregoing paragraphs into each cause of action. In the first ninety-three paragraphs of the Complaint, Plaintiffs make detailed allegations regarding transfers of investor monies to and from dedicated well accounts; Mr. and Mrs. Alfaro; a general Primera account; vendors; stock accounts; and to purchase a number of vehicles, homes, vacations, furnishings, jewelry, watches and audio-visual equipment. On pages 29-31 of the Complaint, Plaintiffs provide a chart which alleges transfers of specific assets to 430 Assets, LLC and the Brian and Kristi Alfaro Living Trust. The chart also provides allegations that a number of assets were sold. Further, ¶ 87 alleges transfers of assets to Silver Star Resources, LLC. In reviewing the Complaint, the Court therefore finds that the Plaintiffs have specifically alleged transfers to Alfaro, the Alfaro Entities, Silver Star Resources, LLC, 430 Assets, LLC, Kristi Alfaro, and the Brian and Kristi Alfaro Living Trust. As such, the TUFTA claims against those specifically alleged parties shall not be dismissed. The TUFTA claims against King Minerals, LLC and Ana and Avery's Candy Island, however, have not been specifically plead and therefore, must be dismissed.[4]

## III. Fraud in a Real Estate Transaction

Texas Business and Commerce Code § 27.01(a) provides the elements for statutory fraud in a real estate transaction and stock transaction. It states:

---

[4] To be clear, TUFTA and Fed. R. Civ. P. 9(b) require the Plaintiffs to allege with specificity the transfers which subject each Defendant to liability for avoidance of the alleged fraudulent transfer. Dismissal of King Minerals, LLC and Ana and Avery's Candy Island from liability for any alleged fraudulent transfer does not, however, dismiss any of the other remaining Defendants in this cause of action from maintaining liability on the basis of a transfer which the evidence may ultimately show was made to the dismissed Defendants.

(a) Fraud in a transaction involving real estate or stock in a corporation or joint stock company consists of a

> (1) false representation of a past or existing material fact, when the false representation is
>
> > (A) made to a person for the purpose of inducing that person to enter into a contract; and
> >
> > (B) relied on by that person in entering into that contract; or
>
> (2) false promise to do an act, when the false promise is
>
> > (A) material;
> >
> > (B) made with the intention of not fulfilling it;
> >
> > (C) made to a person for the purpose of inducing that person to enter into a contract; and
> >
> > (D) relied on by that person in entering into that contract.

Defendants argue that Plaintiffs' statutory fraud claim must be dismissed for failure to state a claim because: (1) partnership interests are personal property and their purchase and sale cannot support a claim for real estate fraud; and (2) the purchase of fractional interests in oil and gas projects do not effectuate a conveyance of real estate. Essentially, Defendants' argument is that the investments by Plaintiffs never involved the conveyance of real estate or stock and therefore, cannot serve as the basis for a claim of real estate fraud under Tex. Bus. & Comm. Code § 27.01. Plaintiffs respond that they maintain a cognizable claim for real estate fraud because they purchased working interests, which are considered to be real property in Texas.

"'For fraud in a transaction to be actionable under § 27.01, the contract must actually effect the conveyance of real estate between the parties and cannot merely be tangentially related or a means of facilitating a conveyance of real estate.'" *Fidelity Nat. Title Ins. Co. v. Doubletree Partners, L.P.*, 866 F. Supp. 2d 604, 632 (E.D. Tex. 2011) (quoting *Windsor*

*Village, Ltd. v. Stewart Title Ins. Co.*, 2011 WL 61848, at *5 (Tex. App.—Houston [14th Dist.] March 17, 2011, no pet.)). Defendants are correct that the purchase of partnership interests does not implicate Tex. Bus. & Comm. Code § 27.01 because there is no conveyance of real estate, even where the partnership is organized to develop real property interests. *See Kitchell v. Aspen Expl., Inc.*, 562 F. Supp. 2d 843 (E.D. Tex. 2007) (citing *Marshall v. Quinn-L Equities, Inc.*, 794 F. Supp. 1384, 1392 (N.D. Tex. 1988); *Am. Title Ins. Co. v. Byrd*, 384 S.W.2d 683, 685 (Tex. 1964); Tex. Bus. Org. Code § 154.001 (partnership interests are personal property)).

Plaintiffs, however, allege that they purchased working interests and did not enter into partnership agreements (ECF No. 133, ¶¶ 22, 25-26, 31, 51, 54). "Under Texas law, a conveyance of a working interest in oil and gas is a real property interest that subject the agreement conveying the interest to the statute of frauds." *Exxon Corp. v. Breezevale, Ltd.*, 82 S.W.3d 429, 436 (Tex. App.—Dallas 2002, pet. denied) (citations omitted). In *Exxon Corp.*, the Texas Court of Appeals considered whether the transfer of severable mineral interests in oil and gas leases are regarded as a sale of real estate under the Texas statute of frauds. *Id.* One of defendant's arguments in that case was that the subject agreement did not convey a working interest but only a contractual right to the share of production. *Id.* In addressing this argument, the court stated that, even assuming the only interest conveyed was in the contractual right to production, the question "is not whether title to the minerals passes, but whether the interest is derived from rights to oil and gas in the ground . . . ." *Id.* "As the Texas Supreme Court has stated, 'a right to land essentially implies a right to profits accruing from it, since, without the latter, the former can be of no value . . . [t]hus a devise of the profits of land or even a grant of them, will pass a right to land itself.'" *Id.* at 436-37 (quoting *Sheffield v. Hogg*, 124 Tex. 290 (1934) (citations omitted)). As such, the *Exxon Corp.* court concluded that "a conveyance of an

interest in the minerals that are produced from land, such as a working interest or a royalty interest, passes a right to the land itself." *Id.* at 437 (citing *Pecos Dev. Corp. v. Hydrocarbon Horizons, Inc.*, 803 S.W.2d 266, 267 (Tex. 1991)).

When considering a motion to dismiss for failure to state a claim, the court must "accept all well-pleaded facts as true and view all facts in the light most favorable to the plaintiff." *Thompson*, 764 F.3d at 502-03 (citing *Iqbal*, 556 U.S. at 678). Therefore, accepting Plaintiffs' well-plead allegations that Plaintiffs purchased working interests as true, the Court finds that, under Texas law, a working interest in oil and gas is a real property interest. As such, Plaintiffs' have plead a cognizable claim for statutory fraud in a real estate transaction pursuant to Tex. Bus. & Comm. Code § 27.01.

## IV. Breach of Fiduciary Duty

Defendants argue that the facts alleged in Plaintiffs' Complaint do not support a claim for breach of fiduciary duty because Plaintiffs have not sufficiently alleged a fiduciary relationship. In reviewing the Complaint, the Court finds that the extent of Plaintiffs' allegations regarding the existence of a fiduciary relationship is to state the following:

> Investors and Mr. Alfaro and the Alfaro Entities have a fiduciary relationship. Mr. Alfaro and the Alfaro Entities, as those operating control over the relationship and acted on their behalf under a purported power of attorney, owe Investors, who had no operational control, one of the highest fiduciary duties under the law.

(ECF No. 133, ¶ 105). The Court can find no other mention of a power of attorney in the entirety of Plaintiffs' Complaint. Further, the Court can find no other mention of a fiduciary duty in the entirety of Plaintiffs' Complaint. Defendants' Motion to Dismiss and Plaintiffs' Response argue a number of circumstances in which a fiduciary may or may not exist. This Court, however, is bound to look to the pleadings to determine whether the cause of action has been adequately plead under the standards of Fed. R. Civ. P. 8(a) and the standards set forth by

the Supreme Court in **Iqbal** and **Twombly**. **Iqbal**, 556 U.S. at 678; *see also* **Twombly**, 550 U.S. at 570. As previously stated, "[a]though the rule encourages brevity, the complaint must say enough to give the defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" **Tellabs**, 551 U.S. at 319 (citations omitted). The Court finds that Plaintiffs' Complaint does not adequately plead the existence of a fiduciary relationship to give Defendants' fair notice of the grounds upon which Plaintiffs' claim for breach of fiduciary duty rests. The brief mention of a "purported power of attorney" which is explained nowhere else in the allegations and fact recitals of the Complaint is insufficient to meet the pleading standards required in federal court. As such, the Court finds that Plaintiffs' claims for breach of fiduciary duty are dismissed as to the moving Defendants. The remaining Defendants—Primera, Alfaro Oil and Gas, LLC and Alfaro Energy, LLC—have not moved for dismissal; therefore, Plaintiffs' breach of fiduciary duty claims remain as to the non-moving Defendants.

## V.      Deceptive Trade Practices Act

Defendants argue that Plaintiffs cannot state a claim for violation of the Deceptive Trade Practices Act ("DTPA") because Plaintiffs are not "consumers" under the statute. The DTPA provides that the definition of a "consumer" is:

> an individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services, except that the term does not include a business consumer that has assets of $25 million or more, or that is owned or controlled by a corporation or entity with assets of $25 million or more.

Tex. Bus. & Comm. Code § 17.45(4). "Goods" is defined by the DTPA as "tangible chattels or real property purchased or leased for use." Tex. Bus. & Comm. Code § 17.45(1). "Services" is defined under the DTPA as "work, labor, or service purchased or leased for use, including

services furnished in connection with the sale or repair of goods." Tex. Bus. & Comm. Code § 17.45(2).

Plaintiffs base their claim that they are consumers under the DTPA on the allegations that they purchased a good or service by their investments with Alfaro and the Alfaro Entities. Plaintiffs argue that the purchase of oil and gas interests are interests in real property and therefore, constitute a "good." Plaintiffs also argue that their investments included the purchase of services furnished by Alfaro and the Alfaro entities as operators of the wells.

In response, Defendants direct this Court to a line of cases which hold that a non-operating interest owner is not a "consumer" of goods or services under the DTPA. *See C & C Partners v. Sun Expl. & Prod. Co.*, 783 S.W.2d 707, 711-13 (Tex. App.—Dallas 1989, writ denied); *Hamilton v. Texas Oil & Gas Corp.*, 648 S.W.2d 316 (Tex. App.—El Paso 1982, writ ref'd n.r.e.). In both *C & C* and *Hamilton*, the parties included an operator and a non-operator working interest owner who had entered into a joint operating agreement and the non-operator had sued for alleged deceptive trade practices. *C & C*, 783 S.W.2d at 712; *Hamilton*, 648 S.W.2d at 319. In *C & C*, the Court held that "[a] plaintiff establishes his standing as a consumer in terms of his relationship to a transaction, not by a contractual relationship with the defendant." 783 S.W.2d at 712 (citing *Birchfield v. Texarkana Mem. Hosp.*, 747 S.W.2d 361, 368 (Tex. 1987)). In applying identical facts to the *C & C* case, the court provided the following analysis from the *Hamilton* court in determining that the non-operator working interest owner was not a consumer under the DTPA:

> TXO [the operator] was simply reimbursed for costs incurred on behalf of the operating and non-operating interest owners. [The nonoperator] did not employ TXO. Rather, there was merely a consolidation of interests. TXO was the "front man" incurring the debts for all, for which it was entitled to be reimbursed. That TXO did not intend to make a profit for what it did is a factor to be weighed . . . . The purpose of operating agreements, being to spread the risk of drilling

operations among several investors with the operator managing the books and making disbursements from a joint account for the benefit of all involved in the [joint operating agreement], should not be construed, we believe, to create liabilities under the [DTPA]. We hold that under the facts of this case, [the nonoperator], as a matter of law, was not a "consumer" of services as contemplated within the [DTPA] and that the trial court was not in error in disregarding the jury finding to the contrary.

*C & C*, 783 S.W.2d at 712-13 (quoting *Hamilton*, 648 S.W.2d at 322).

In accepting as true all well-plead facts for the Plaintiffs, the Court finds that the allegations do not merely allege that Plaintiffs are non-operator working interest owners in a joint operating agreement. In fact, Plaintiffs allege that previously used joint venture language was removed by Alfaro from the PPMs. In reviewing the entirety of the Complaint, the Court finds that the allegations of the arrangement offered by Defendants is not the same non-operator/operator relationship embodied in customary joint operating agreements. The allegations in the Complaint clearly put Defendants on notice that Plaintiffs allege Defendants offered and sold units of real property interests and services to Plaintiffs. Further, as Plaintiffs correctly note in their Response, the allegations in the Complaint are distinguished from the relationship in *C & C* and *Hamilton* in that Defendants were not simply reimbursed for their costs incurred on behalf of all owners, and Defendants were not simply the "front man" for the investors. Based on these allegations, the Court finds that Plaintiffs have adequately alleged facts to support a finding that Plaintiffs are "consumers" under the DTPA.

## VI. Negligent Misrepresentation

The elements of a cause of action for negligent misrepresentation are identical to that of fraud with the exception that the plaintiff need only show that the defendant did not exercise reasonable care or competence in obtaining or communicating information that was false and supplied for the guidance of others, rather than meeting a heightened requirement of knowledge

or recklessness regarding the falsity. For the reasons addressed by the Court in Section I of this Order, the Court finds that Defendants' request to dismiss Plaintiffs' claims of negligent misrepresentation should be denied.

## VII. Conversion

"Conversion is the unauthorized and unlawful assumption and exercise of dominion and control over the personal property of another which is to the exclusion of, or inconsistent with the owner's rights." *Cass v. Stephens*, 156 S.W.3d 38, 61-62 (Tex. App.—El Paso 2004, writ denied) (citing *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 446 (Tex. 1971); *Whitaker v. Bank of El Paso*, 850 S.W.2d 757, 760 (Tex. App.—El Paso 1994, no writ)). The elements of conversion are: (1) plaintiff had legal possession of, or was entitled to, possession of the property; (2) defendant assumed and exercised dominion and control over the property in an unlawful or unauthorized manner to the exclusion of, and inconsistent with, plaintiff's rights; and (3) defendant refused plaintiff's demand for return of the property. *Texas Dept. of Transp. v. Crockett*, 257 S.W.3d 412, 416 (Tex. App.—Corpus Christi 2008, pet. denied). Demand and refusal is not necessary when the possessor's acts manifest a clear repudiation of the plaintiff's rights. *Cass*, 156 S.W.3d at 61.

In their Complaint, Plaintiffs assert that—as to those Plaintiffs who invested in the Screaming Eagle 1H well—Defendant converted the Screaming Eagle 1H well when he sold it and did not disburse any of the proceeds to those Plaintiffs. Defendant argues that Plaintiffs' claim should be dismissed for two reasons: (1) the property underlying Plaintiffs' claim is money, and (2) the economic-loss rule bars Plaintiffs' conversion claims.

First, Defendant argues that Plaintiffs may not maintain their conversion claims because the only property which they allege is converted is money. Defendant argues that, under Texas

law, "[w]here money is involved, it is subject to conversion only when it can be described or identified as specific chattel, but not where an indebtedness may be discharged by the payment of money generally." *Mitchell Energy Corp. v. Samson Res. Co.*, 80 F.3d 976, 984 (5th Cir. 1996); *see also* *Cone v. Fagadau Energy Corp.*, 68 S.W.3d 147, 165 (Tex. App.—Eastland 2001, pet. denied) ("Conversion does not lie for indebtedness that may be discharged by the payment of money generally.") (citations omitted). Plaintiffs, however, have not merely alleged conversion of the proceeds from the sale of the Screaming Eagle 1H well. Rather, Plaintiffs have alleged that their interests in the mineral interests themselves were converted. In *Mitchell*, the Fifth Circuit Court of Appeals distinguished the facts of that case—where only proceeds of production were "appropriated"—from a situation where the entire mineral estate had been converted. 80 F.3d at 983 ("The most that can be said for the instant case is that only proceeds of production have been 'appropriated,' not the entire mineral estate owned by the cotenants."). The Court, therefore, finds that Plaintiffs have adequately plead conversion of their property and not simply payment of money generally.

Second, Defendants argue that Plaintiffs may not recover under conversion for losses that occurred merely as a consequence of an alleged failure of a party to perform under a contract. The economic-loss rule "generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007) (citing *Sw. Bell. Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494-95 (Tex. 1991)). "In operation, the rule restricts contracting parties to contractual remedies for those economic losses associated with the relationship, even when the breach might reasonably be viewed as a consequence of a contracting party's negligence." *Id.* at 12-13 (citing *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986)). Defendants argue that this case is

similar in facts to *Castle Texas Prod. Ltd. P'ship. v. Long Trusts*, 134 S.W.3d 267 (Tex. App.—Tyler 2003, pet. denied).  In *Castle*, the issue presented to court was whether a party to joint operating agreements and gas balancing agreements could prevail on an action for conversion of gas.  *Id.*  The court of appeals looked to Texas Supreme Court precedent in *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41 (Tex. 1998).  In *Formosa*, the Texas Supreme Court stated that it "is already well established that the legal duty not to fraudulently procure a contract is separate and independent from the duties established by the contract itself."  *Castle*, 134 S.W.3d at 273 (citing *Formosa*, 960 S.W.2d at 46).  The *Castle* court then declined to adopt an analogy between fraud and conversion and failed to extend *Formosa*'s holding beyond claims for fraud.  *Castle*, 134 S.W.3d at 275 (citing *D.S.A., Inc. v. Hillsboro ISD*, 973 S.W.2d 662, 663 (Tex. 1998) (supreme court expressly refused to extend negligent misrepresentation cases the *Formosa* exception to the independent injury rule applied in fraudulent inducement cases)).

Here, Plaintiffs have distinguished their case from that of *Castle* because they allege fraudulent inducement in those same agreements which Defendants seek to enforce to bar any conversion claims.  Although the ultimate outcome of Plaintiffs' conversion claims may rest on the Court's determination in their fraudulent inducement actions, the Court finds that it would be premature to dismiss Plaintiffs' conversion claims at this stage.  Furthermore, Plaintiffs allege that, even if the agreements are binding on the parties, the agreements contain no provisions detailing the rights and duties of the parties with respect to the sale of the Screaming Eagle 1H well.  As such, taking all well-plead facts in favor of Plaintiffs, the Court finds that Plaintiffs have adequately plead a claim for conversion and Defendants' motion to dismiss the conversion claims is denied.

## VIII.   Money Had and Received

"Money had and received is a category of general assumpsit to restore money where equity and good conscience require refund." *MGA Ins. Co. v. Charles R. Chestnutt, P.C.*, 358 S.W.3d 808, 813 (Tex. App.—Dallas 2012, no pet.).  "A cause of action for money had and received is not premised on wrongdoing, but 'looks only to the justice of the case and inquires whether the defendant has received money which rightfully belongs to another.'" *Id.* (quoting *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App.—El Paso 1997, no writ)). Defendants object to Plaintiffs' claim for money had and received on the basis that Defendants allege Plaintiffs paid the money voluntarily, with full knowledge and without fraud or duress. The voluntary payment rule states that money which is "'voluntarily paid on a claim of right, with full knowledge of all the facts, in the absence of fraud, deceptions, duress, or compulsion, cannot be recovered back merely because the party at the time of payment was ignorant of or mistook the law as to his liability.'" *BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 768 (Tex. 2005) (quoting *Pennell v. United Ins. Co.*, 243 S.W.2d 572, 576 (Tex. 1951)).

Here, the Court has previously ruled in Section I of this Order that Plaintiffs' have sufficiently plead their claims for fraud and fraudulent inducement.  As such, the Court finds Defendants' defense of voluntary payment unavailing at the motion to dismiss stage where all well-plead facts are taken in favor of Plaintiffs.  Therefore, the Court finds that Defendants' motion to dismiss Plaintiffs' claim for money had and received should be denied.

## IX.   Unjust Enrichment

To recover under unjust enrichment, Plaintiffs must show that Defendants "obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros. Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 43 (Tex. 1992).  In other words, "[u]njust

enrichment is enrichment that lacks an adequate legal basis: it results from a transfer that the law treats as ineffective to work a conclusive alteration in ownership rights." *Texas Architectural*, 430 B.R. at 412 (quoting *Restatement (Third) of Restitution and Unjust Enrichment* § 1, cmt. b (Discussion Draft 2000)). "The doctrine is based on the principle that someone that receives benefits which would be unjust for him to retain, ought to make restitution even though no contract exists." *Texas Architectural*, 430 B.R. at 412 (citing *Mowbray v. Avery*, 76 S.W.3d 663, 679 (Tex. App.—Corpus Christi 2002, pet. denied)).

Defendants argue that Plaintiffs cannot maintain a claim for unjust enrichment because the parties executed and delivered subscription agreements which serve as the contracts governing the parties' disputes. As such, Defendants' argument is that unjust enrichment only provides for a remedy where no contract exists. Here, the Court has previously ruled in Section I of this Order that Plaintiffs have sufficiently plead fraudulent inducement claims regarding the agreements upon which Defendants' rely. Therefore, the Court finds that Defendants' motion to dismiss Plaintiffs' claim of unjust enrichment should be denied.

## X.  Violation of Texas Securities Laws

Plaintiffs alleged in their Complaint that Defendants violated the Texas Securities Act in three ways: (1) by selling unregistered securities; (2) by failing to register the person selling securities; and (3) by engaging in fraudulent practices in the sale of securities. Defendants seek dismissal of Plaintiffs claims on the basis that: (1) the agreements clearly state that the ownership interests in the wells are exempt from registration provided that accredited investors purchase them; (2) all investors were required to attest to their eligibility and qualifications as accredited investors; and (3) Defendants did not engage in any misrepresentations or fraud.

Here, the Court has previously ruled in Section I of this Order that Plaintiffs have sufficiently plead fraudulent inducement claims regarding the agreements upon which Defendants' rely.  As such, the whole of those agreements are called into question and the Court will decline to dismiss any cause of action on the basis of enforceability of the agreements, at this stage.  Additionally, the Court has previously ruled in this Order that Plaintiffs have sufficiently plead a claim for fraud.  Further, the Court finds that Plaintiffs sufficiently plead facts that, if taken in the light most favorable to Plaintiffs, support a finding that some Plaintiffs were not accredited, yet were induced and permitted to enter into agreements notwithstanding. For these reasons, the Court finds Defendants' arguments regarding alleged violations of the Texas Securities Act unavailing at the motion to dismiss stage.  Therefore, the Court finds that Defendants' motion to dismiss Plaintiffs' claims for violations of the Texas Securities Act should be denied.

## XI.    Conspiracy

Plaintiffs have alleged in their Complaint civil conspiracy perpetrated by all Defendants to divert Plaintiffs' monies under the numerous causes of action alleged in the Complaint. Defendants argue that Plaintiffs' civil conspiracy claim must be dismissed because there is no underlying intentional tort in which Defendants may have participated.  Here, the Court has previously ruled in this Order that Plaintiffs have sufficiently plead a number of their claims which, if proven, would serve as the underlying intentional tort upon which Plaintiffs' claim of civil conspiracy is plead.  As such, the Court finds that Defendant's motion to dismiss Plaintiffs' claim of civil conspiracy should be denied.

## XII. General Objection for Failure to Distinguish Between "Plaintiffs'" and "Defendants"

To the extent that Defendants raised objections to the specificity of Plaintiffs' complaint regarding the liable parties in their Motion to Dismiss, the Court has addressed those objections and will consider the arguments going forward in accordance with the allegations of the Complaint. At the motion to dismiss stage, this Court shall accept all well-plead facts in favor of Plaintiffs. Where Plaintiffs have plead that all Plaintiffs hold a cause of action, Plaintiffs will be required to prove same before a judgment may be awarded in each individual Plaintiffs' favor. Likewise, where Plaintiffs have alleged liability on the part of all Defendants, Plaintiffs will be required to prove same before a judgment may be awarded against each individual Defendant. As such, the Court shall not dismiss those claims which Plaintiffs have alleged all Plaintiffs are entitled to relief and/or all Defendants are liable, beyond what has been specifically addressed in each cause of action.

## XIII. Plaintiffs' Request to Amend Pursuant to Fed. R. Civ. P. 15

In their Response, Plaintiffs request leave of this Court to amend the Complaint pursuant to Rule 15 in the event the Court found that any element should be plead in more detail or additional facts were required to support their claims. Fed. R. Civ. P. 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Defendants oppose Plaintiffs' request for leave to amend. Given the fact that the current complaint is Plaintiffs' Fourth Amended Complaint, the Court declines to grant such request. Although Fed. R. Civ. P. 15(a)(2) is construed liberally to allow amendment, the Court finds that, in this case, such amendment would be futile to sustain those causes of action upon which the Court granted dismissal.

Further, the Court finds that justice has been accomplished pursuant to this Court's granting of extensive leave to amend previously.

### CONCLUSION

For the aforementioned reasons, the Court concludes that Plaintiffs' claim for breach of fiduciary duty should be dismissed as to the moving Defendants. Further, the Court concludes that Plaintiffs' TUFTA claims against King Minerals, LLC and Ana and Avery's Candy Island only should be dismissed. The Court finds that Defendants' Motion to Dismiss as to all other causes of action should be denied.

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss Fourth Amended Complaint Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is GRANTED, in part, and DENIED, in part.

IT IS FURTHER ORDERED that Plaintiffs' claims for breach of fiduciary duty as to the moving Defendants are DISMISSED for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

IT IS FURTHER ORDERED that Plaintiffs' Texas Uniform Fraudulent Transfer Act claims as to Defendants King Minerals, LLC and Ana and Avery's Candy Island only are DISMISSED for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

IT IS FURTHER ORDERED that Plaintiffs' request to amend the Complaint pursuant to Fed. R. Civ. P. 15 is DENIED.

All relief not specifically granted herein is DENIED.

###