**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: March 29, 2018.**

_Craig A. Gargotta_
_____
**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 15-51396-CAG |
| | § | |
| PRIMERA ENERGY, LLC, | § | CHAPTER 11 |
|     Debtor. | § | |
| | § | |
| FREDERICK PATEK; | § | |
| GERALDINE PATEK; | § | |
| JASPER COMPISE; | § | |
| WILLIAM CRAWFORD; | § | |
| MICHAEL COVINGTON; | § | |
| RICK GRIFFEY; | § | ADVERSARY NO. 15-05047-CAG |
| ED MCPHERSON; | § | |
| DIETER JANSEN; | § | |
| QUACKENBUSH PETROLEUM LLC; | § | |
| JAMES REILEY; | § | |
| BETTY REILEY; | § | |
| RICK REILEY; | § | |
| VINCENT J. GILLETTE; | § | |
| MARJORIE A. GILLETTE; | § | |
| THOMAS J. GILLETTE; | § | |
| EDWARD A. GILLETTE; | § | |
| SHARON WALLS; | § | |
| BUDDY WALLS; | § | |
| DC OIL COMPANY, INC.; | § | |
| BUFORD SALMON; | § | |
| LILLIAN SALMON; | § | |
| JOSEPH HART; | § | |

1

| | |
|---|---|
| BRIAN HUBER; | § |
| DAVID DAVALOS; | § |
| DANIEL DAVALOS; | § |
| FREDERICK JOHNSTON; | § |
| MILAN KNEZOVICH 11; | § |
| FOUNTAINGATES INVESTMENT GROUP; | § |
| JAMES PETERS; and | § |
| BROC YAKEL, | § |
|     Plaintiffs, | § |
| | § |
| V. | § |
| | § |
| BRIAN K. ALFARO; | § |
| KING MINERALS, LLC; | § |
| SILVER STAR RESOURCES, LLC; | § |
| 430 ASSETS, LLC, A MONTANA LLC; | § |
| KRISTI MICHELLE ALFARO; | § |
| BRIAN AND KRISTI ALFARO, AS | § |
| TRUSTEES OF THE BRIAN AND KRISTI | § |
| ALFARO LIVING TRUST; and | § |
| ANA AND AVERY'S CANDY | § |
| ISLAND, LLC, | § |
|     Defendants. | § |

## ORDER DENYING PLAINTIFFS' MOTION TO ALTER OR AMEND FINAL JUDGMENT (ECF NO. 374).

Came on for consideration Plaintiffs' Motion to Alter or Amend Final Judgment (ECF No. 374) ("Motion to Alter or Amend"). Defendants filed their Response in Opposition to Plaintiffs' Motion to Alter or Amend Final Judgment (ECF No. 386) ("Response in Opposition"). The Court took the matter under advisement without necessity of a hearing.

### PROCEDURAL BACKGROUND

On March 21, 2016, Plaintiffs filed their Fourth Amended Complaint. Prior to trial, the Court also issued two Orders Granting, in Part, and Denying, In Part, Defendants' Motions to Dismiss (ECF Nos. 165 and 327). Pursuant to the Court's Orders on the Motions to Dismiss, the Court dismissed the following: (1) Plaintiffs' TUFTA claims against King and Candy Island; and

(2) Plaintiffs' claims for breach of fiduciary duty against all Defendants.

The parties proceeded to trial on the following remaining claims: (1) common law fraud and fraud in the inducement; (2) fraud in a real estate transaction; (3) negligent misrepresentation; (4) Deceptive Trade Practices Act ("DTPA") claims; (5) violations of the Texas Securities Act; (6) conversion; (7) Texas Uniform Fraudulent Transfer Act ("TUFTA") claims against all Defendants but King and Candy Island; (8) unjust enrichment/disgorgement; (9) money had and received; and (10) civil conspiracy. The Court conducted a six-day trial before taking the matters under advisement. Not all of Plaintiffs testified, apparently relying on the evidence adduced at trial to support their claims for relief. After presentation of their evidence, Plaintiffs rested and Defendants asked for a directed verdict, asserting that the Plaintiffs had not met their burden of proof. The Court denied Defendants' oral request for a directed verdict. Thereafter, Defendants rested without offering any controverting evidence or argument. Trial was concluded on April 18, 2017, and the Court allowed the parties to submit post-trial briefs.

On December 29, 2017, the Court entered a Memorandum Opinion (ECF No. 369), and Final Judgment (ECF No. 370). In the Final Judgement, the Court ordered that Plaintiffs prevailed on their claims for common law fraud, fraud in the inducement, fraud in the real estate transaction, and negligent misrepresentation. It was further ordered that a take-nothing judgment be entered on Plaintiffs' claim for DTPA, violation of the Texas Securities Act, conversion, unjust enrichment, money had and money received, and civil conspiracy. The Court further ordered that Plaintiffs' request for actual damages in the amount of $7,989,526.75. The Court also granted Plaintiffs' request for a constructive trust for Defendants' violation of Tex. Bus. & Comm. Code § 24.0052. Finally, the Court ordered that Defendants provide an accounting for the following property: (1) Salary and compensation transferred to the Living Trust beginning March 2016; (2) Bentley

purchased within the last two years with a purchase price of $189,000.00; and (3) Cadillac purchased in May 2013 for $33,705.

PARTIES' CONTENTIONS

Plaintiffs take issue with the Court's findings regarding fraud and money had and received. Plaintiffs request that the Court amend its findings for both causes of action. Regarding money had and received, Plaintiffs contend that not all Plaintiffs recovered under their fraud claims and, therefore, are entitled to recover under their money had and received claims. For fraud, Plaintiffs argue that if this Court disagrees with Plaintiffs' money had and received argument, that the judgment should be amended regarding its finding that certain Plaintiffs failed to show reliance to recover under a fraud claim. Plaintiffs contend that this Court failed to correctly review and cite evidence from Plaintiffs' discovery responses that would sufficiently demonstrate reliance. Further, Plaintiffs argue that this Court could have reasonably inferred reliance based on the circumstances, and therefore, all Plaintiffs should recover under their fraud claims.

In response, Defendants first take issue with how Plaintiffs have been defined both in the Motion to Alter or Amend and throughout the life of this case. Defendants argue that Plaintiffs' Motion to Alter or Amend is brought on behalf of "all Plaintiffs in this adversary." Plaintiffs, however, have failed to identify whether the Motion to Alter or Amend is brought on behalf of the eight non-testifying Plaintiffs and the seventeen testifying witnesses from the trial, the twenty-eight Plaintiffs

Next, Defendants noted that the Fifth Circuit has cautioned that a Rule 59(e) motion is "an extraordinary remedy that should be used sparingly." ***Templet v. HydroChem Inc.***, 367 F.3d 473, 479 (5th Cir. 2004). Further, Defendants note that the grounds for granting a motion to alter or amend a judgment under Rule 59(e) are as follows: (1) an intervening change in controlling law;

4

(2) the availability of new evidence not previously available; or (3) the need to correct manifest errors of law or fact. To be considered "manifest error," the error must be plain, indisputable, and amounting to a complete disregard for the controlling law. ***Guy v. Crown Equip. Corp.***, 394 F.3d 320, 325 (5th Cir. 2004) (citation omitted).

Regarding fraud, Defendants argue that Plaintiffs are using the Motion to Alter or Amend to rehash evidence already presented and that Plaintiffs have failed to identify with specificity the manifest error in the Court's findings of fact or conclusions of law. Defendants also argue that Plaintiffs are now incorrectly attempting to have the Court rely on evidence that was previously introduced at trial for a different purpose in order to support their legal theories for fraud. Finally, Defendants allege that Plaintiffs are incorrectly using the Motion to Alter or Amend to prove specific Plaintiffs' cases when a new trial for these Plaintiffs would be more appropriate. Plaintiffs incorrectly use fraud evidence for all Plaintiffs instead of pointing to specific evidence that would prove the unsuccessful Plaintiffs' fraud claims.

Regarding money had and received, Defendants allege that Plaintiffs failed to identify a specific issue contained in the Final Judgment that results in manifest error.

## ANALYSIS

### I.    Money Had and Received

Plaintiffs request the Court amend its findings under money had and received to allow recovery for those Plaintiffs who were denied recovery under fraud. (ECF No. 374, ¶ 2 ).

"A cause of action for money had and received is not premised on wrongdoing, but 'looks only to the justice of the case and inquires whether the defendant has received money which rightfully belongs to another.'" ***MGA Ins. Co. v. Charles R. Chesnutt, P.C.***, 358 S.W.3d 808, 813 (Tex. App.—Dallas 2012, no pet.) (quoting *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App.

— 1997, no writ.)). "Such an action may be maintained to prevent unjust enrichment when a party obtains money which in equity and good conscience belongs to another." *Id.* (citing *Everett v. TK–Taito, L.L.C.,* 178 S.W.3d 844, 860 (Tex. App. —Fort Worth 2005, no pet.)). "In short, it is an equitable doctrine applied to prevent unjust enrichment." *Id.* (citing *Everett,* 178 S.W.3d at 860)).

Plaintiffs argue that because the Court found that Defendants committed a number of "bad acts," such a finding supports a conclusion that the Plaintiffs who did not recover under fraud are entitled to recover under their money had and received claims. (ECF No. 374, ¶¶ 4–5 ).The Court disagrees. Money had and money received does not require an element of wrongdoing by the defendant; rather, the sole inquiry is whether defendant has received money that rightfully belongs to another. *Burres v. Reyes,* 516 S.W.3d 170, 197 (Tex. App. —El Paso 2017, pet. denied.).

Plaintiffs also argue that Alfaro sold the Screaming Eagle 1H Well in December 2014 for approximately $92,000 and that Plaintiffs, as a result of their working interests, were entitled to proceeds from that sale (the "Proceeds"). (ECF No. 374, ¶ 6). The Court disagrees. First, Plaintiffs who invested in the Screaming Eagle 1H Well purchased an interest in The Screaming Eagle 1H Well Joint Venture (the "Joint Venture") as evidenced by Joint Venture Joint Venture Agreement of the Screaming Eagle 1H Well Joint Venture (the "Joint Venture Operating Agreement") and the Screaming Eagle 1H Well Confidential Private Placement Memorandum (the "Screaming Eagle 1H PPM") (collectively, the "Screaming Eagle 1H Contract"). Preliminary Injunction Hearing, Pl. Ex. 10, Exhibit A, at 1, 6; *see also* Preliminary Injunction Hearing, Pl. Ex. 10 at 12, 17 (identifying Plaintiffs as "Venturers" and defining "Venturers" as "all persons or entities which are a party to the Joint Venture Agreement and who participate in [interests in the Joint Venture]"). The Joint Venture, in turn, owned the working interests in the Screaming Eagle 1H Well. Preliminary Injunction Hearing, Pl. Ex. 10 at 13 ("The Joint Venture, if fully funded, will acquire to [sic] up to

71.25% of the Working Interest in the [Screaming Eagle 1H Well].”); *see also id.* at 14 (identifying the Joint Venture as a majority working interest owner in the Screaming Eagle 1H Well). As such, to contend that Plaintiffs are entitled to proceeds from the sale of the Screaming Eagle 1H Well because of their working interests is factually incorrect.

Moreover, to the extent that the interest-owning Plaintiffs are entitled to the Proceeds, such entitlement is governed by the Screaming Eagle 1H Contract. Preliminary Injunction Hearing, Pl. Ex. 10, Exhibit A, at 15 (“A Venturer shall have all the rights and obligations granted to a general partner and Joint Venturer under the Texas Code, subject to the terms and provisions in this Agreement, except those matters set forth in Section 152.002 of the Texas Code.”). “The quasi-contractual action for money had and received is a cause of action for a debt *not evidenced by a written contract between the parties*.” **MGA Ins. Co.**, 358 S.W.3d at 815; *see also* **Villages of Sanger, Ltd. v. Interstate 35/Chism Road, L.P.**, No. 05-16-00366-CV, 2018 WL 703327, at *6 (Tex. App.—Dallas, Feb. 5, 2015, no pet.) (emphasis added) (affirming a trial court’s determination that a money had and received cause of action could not lie where a writing expressly addressed rights and obligations). Here, whether or not Plaintiffs are entitled to the Proceeds is a matter of the Plaintiffs’ rights under the Screaming Eagle 1H Contract. As such, a money had and received cause of action is the not appropriate cause of action for recovering the Proceeds.[1]

Plaintiffs also address Defendants’ reliance on the voluntary-payment rule as a defense and contend that such reliance fails because Defendants obtained Plaintiffs’ money through fraud and

---

[1] There are a line of cases in Texas that have permitted a money had and received cause of action to move forward despite the existence of an express contract covering the dispute giving rise to the claim. *See e.g.,* **Norhill Energy LLC v. McDaniel**, 517 S.W.3d 910, 919 (Tex. App.—Forth Worth 2017, no pet.) The Texas Supreme Court, however, has not yet decided whether money had and received claims are barred when an express contract exists between the parties. *Id.* In the Fifth Circuit, the presence of an express contract that addresses the matter under dispute precludes a money had and received claim. **Prime Income Asset Mgmt. Inc. v. One Dallas Centre Assocs.**, 358 Fed. Appx. 569, 572 (5th Cir. 2009) (citing **Fortune Prod. Co. v. Conoco, Inc.**, 52 S.W.3d 671 (Tex. 2000)).

deception. (ECF 374, ¶ 8). For the voluntary-payment rule to apply, a person must make payment "with full knowledge of all the facts." *BMG Direct Marketing, Inc. v. Peake*, 178 S.W.3d 763, 772 (Tex. 2005). As the Court found in its Memorandum Opinion, Defendants obtained Plaintiffs' money by making a series of misrepresentations; it follows, then, that Plaintiffs did not pay for their investments with full knowledge of all the facts. As such, the Court declines to entertain the voluntary-payment rule as a defense to money had and received claim.

As previously noted, "[a] claim for money had and received seeks equitable relief." *Edwards v. Mid-Continent Office Distributors, L.P.*, 252 S.W.3d 833, 836 (Tex. App. —Dallas 2008, no pet.). A "trial court exercises broad discretion in balancing the equities involved in a case seeking equitable relief." *Id.* To prevail on a money had and received claim, Plaintiffs must show that Defendants received money that rightfully belongs to Plaintiffs. *MGA Ins. Co.*, 358 S.W.3d at 813 (quoting *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App. — 1997, no writ.)). Moreover, money had and received "is a quasi-contractual action involving an implied promise and leading to a *claim of debt not necessarily evidenced by a writing*." *Phippen v. Deer and Co.*, 965 S.W.2d 713, 725 n.1 (Tex. App. —Texarkana 1998, no pet.) (emphasis added) (citing *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App. — 1997, no writ.)). Here, Plaintiffs do not have a claim for debt not evidenced by writing; rather, Plaintiffs seek to recover (1) for a series of wrongdoings by Defendants or (2) proceeds that certain Plaintiffs are allegedly entitled to as a matter of contract.

Additionally, the Court also notes that Plaintiffs seek to recover under money had and received for Plaintiffs who did not recover under fraud. In its Memorandum Opinion, the Court found that these specific Plaintiffs did not recover under fraud because they failed to meet their burden on the fourth element of fraud—actual and justifiable reliance. The Court will not allow Plaintiffs to use

this equitable remedy as means of recovering for fraud where Plaintiffs failed to meet their burden under fraud.

For the foregoing reasons, the Court will not amend its judgment.

## II.    Fraud

Plaintiffs further request that this Court amend its judgment regarding its finding that certain Plaintiffs failed to show reliance to recover under a fraud claim. Plaintiffs indicated that the trial record includes certain evidence that each Plaintiff relied on Defendants' misrepresentations that would be sufficient to support a finding of fraud for each Plaintiff. The Court disagrees.

Plaintiffs direct the Court to interrogatory responses 2, 3, 4, and 8, contained in Defense Exhibit Nos. 135 and 136 as evidence of reliance by all Plaintiffs, both testifying and non-testifying. The Court will now review each Plaintiff, along with their relevant interrogatory responses in terms of Defense Exhibit Nos. 135 and 136, and explain why these exhibits fail to change the courts findings.

First it is important to revisit the elements and standard that all Plaintiffs were required to meet to be successful on their fraud claims. To state a claim for common law fraud in Texas, Plaintiffs must prove that: (1) Defendants made a material representation that was false; (2) Defendants knew that the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) Defendants intended to induce Plaintiffs to act upon the representation; and (4) Plaintiffs actually and justifiably relied upon the representation and thereby suffered injury. *Patek et al. v. Brian K. Alfaro et al. (In re Primera Energy, LLC)*, 579 B.R. 75, 144 (Bankr. W.D. Tex. 2017) (citations omitted). This Court also found, and reaffirms its finding here, that there "cannot be actual and justifiable reliance on a document that was not actually read." *Patek*, 579 B.R. at 144. Plaintiffs, testifying or not, that did not read the operative contract or did not receive

15-05047-cag  Doc#399  Filed 03/29/18  Entered 03/29/18 16:54:19  Main Document  Pg 10 of 19

a material misrepresentation for Alfaro or a Primera Agent cannot sufficiently demonstrate reliance on a document that they did not read or for which they did not receive any information regarding the contents.

The Court will first note the contents of Defense Exhibit Nos. 135 and 136. Defense Exhibit 135 is entitled "Plaintiffs' Third Supplemental Combined Responses and Objections to Defendants' Discovery Requests" and contains a number of interrogatory responses, Rule 194 Disclosures, objections, and productions. Defense Exhibit No. 136 is entitled "Plaintiffs Combined Responses and Objections to Defendants Alfaro Oil and Gas, LLC and Alfaro Energy, LLC's Discovery Requests," and includes essentially the same integratory questions, but different or additional interrogatory responses. As such, the Court will focus its analysis on Interrogatory Nos. 2, 3, 4, and 8, contained within Defense Exhibit Nos. 135 and 136. Interrogatory No. 2 states the following:

> For each of the alleged misrepresentations you identify in Plaintiffs' Fourth Amended Complaint, Paragraph 96, please state the following:
> a. The date the alleged misrepresentation was made to you;
> b. The method (e.g., in person, in writing, on the telephone, via email, etc.) by which the alleged misrepresentation was made or delivered to you;
> c. The person(s) who made the statement(s);
> d. Any person(s) who were present when the alleged misrepresentation was made;
> e. A full description of the statement(s) made to you, verbatim if possible;
> f. How you relied on the alleged misrepresentation; and
> g. How you were harmed or damaged by your reliance, including the amount of all such harm or damages.

Defense Exhibit No. 136. Interrogatory No. 3 states the following:

> For each of the omissions you identify in Plaintiffs' Fourth Amended Complaint, please state the following:
> a. The exact information you assert was withheld from you;
> b. Identify the person(s) you contend should have provided the omitted information;
> c. The date you learned the omission has occurred; and
> d. How you would have acted differently had the omission not occurred.

Defense Exhibit No. 136. Interrogatory No. 4 states the following:

> Did you rely on statements made by some person *outside of* what was contained in the private placement memorandum provided to you in making your decision to invest with [Defendants]? If the answer to this interrogatory is yes, please identify the statements made, the speaker of such statements, and the date on which said statements were made for each interest you purchased from [Defendants].

Defense Exhibit No. 136. Interrogatory No. 8 states the following:

> Please identify and describe the false and misleading acts and practices in ¶ 103 of Plaintiffs' Complaint you contend [Defendants] committed knowingly and intentionally and on which you relied in connection with making your purchase of interests from [Defendants].

The Court will now evaluate each unsuccessful Plaintiff's responses in turn and explain why their fraud claim fails despite the evidence contained in Defense Exhibit Nos. 135 and 136.

1.  Dieter Jansen ("Jansen"): The Court, having reviewed the relevant integratory responses, finds that all relied upon statements are covered under the Bespeaks Caution Doctrine as the statements identified were written or oral statements used to predict success of the wells for which Jansen invested. As such, the Court will not change its finding regarding Jansen's fraud recovery.

2.  Brian Huber ("Huber"): The Court, having reviewed the relevant integratory responses, finds that the majority of Huber's responses are covered under the Bespeaks Caution Doctrine as the statements identified were written or oral statements used to predict success of the wells for which Huber invested. The Court does note that, one response stated that, "[p]laintiff relied on statements by Brian Alfaro and documents received from Brian Alfaro." Defense Exhibit No. 136. Interrogatory No. 4. This, simply, is not specific enough to change the Court's disposition. All this response says is that Huber relied on statements from Alfaro. The response does not say which statements Huber relied on thereby making it impossible to determine if Huber relied on statements relevant to the alleged fraud. The

statements Huber is referring to could potentially be related to the fraud charge, or they could be covered under the Bespeaks Caution Doctrine. The Court cannot make that determination based on the unspecific response given. As such, the Court will not change its finding regarding Huber's fraud recovery.

3. Marjorie A. Gillette ("Marjorie"): The Court, having reviewed the relevant integratory responses, finds that Marjorie's responses fail for the same reasons that Huber's response failed. The majority of Marjorie's responses are covered under the Bespeaks Caution Doctrine as the statements identified were written or oral statements used to predict success of the wells for which Marjorie invested. The Court does note that, one response stated that, "[p]lainitff relied on the word of Brian Alfaro." Defense Exhibit No. 136. Interrogatory No. 4. The response does not say what statements Marjorie relied on, making it impossible to determine if Marjorie relied on statements relevant to the alleged fraud. The statements Marjorie is referring to could potentially be related to the fraud charge, or they could be covered under the Bespeaks Caution Doctrine. The Court cannot make that determination based on the unspecific response given. As such, the Court will not change its finding regarding Marjorie's fraud recovery.

4. James Peters ("Peters"): The Court, having reviewed the relevant integratory responses, finds that the majority of Peters's responses are covered under the Bespeaks Caution Doctrine as the statements identified were written or oral statements used to predict success of the wells for which Peters invested. The Court does note that, one response stated that, "[p]lainitff relied on verbal statements made by Brian Alfaro and Justin Rodriguez." Defense Exhibit No. 136. Interrogatory No. 4. The response does not say what statements Peters relied on, making it impossible to determine if Peters relied on statements relevant

to the alleged fraud. The statements Peters is referring to could potentially be related to the fraud charge, or they could be covered under the Bespeaks Caution Doctrine. The Court cannot make that determination based on the unspecific response given. As such, the Court will not change its finding regarding Peters's fraud recovery.

5.  William Crawford ("Crawford"): The Court, having reviewed the relevant integratory responses, finds that all relied upon statements are covered under the Bespeaks Caution Doctrine as the statements identified were written or oral statements used to predict success of the wells for which Crawford invested. As such, the Court will not change its finding regarding Crawford's fraud recovery.

6.  Daniel Davalos ("Davalos"): The Court, having reviewed the relevant integratory responses, finds that all of Davalos's testimony is based on statements made to his son, David Davalos. Even if Davalos had received oral statements directly, all statements in Davalos's interrogatory responses are covered under the Bespeaks Caution Doctrine as the statements identified were written or oral statements used to predict success of the wells for which Davalos invested.

7.  James Reiley ("Reiley"): The Court, having reviewed the relevant integratory responses, finds that the majority of Reiley's responses are covered under the Bespeaks Caution Doctrine as the statements identified were written or oral statements used to predict success of the wells for which Reiley invested. Reiley did, however, indicate that "[w]hen Plaintiffs confronted Brian Alfaro with his previous fraud claims, Alfaro responded by saying they were a bunch of bull, that he hadn't been indicted, and that the claims had all failed." Defense Exhibit No. 136. Interrogatory No. 2. The problem with this statement is that it does not indicate that Reiley made her decision to invest based on Alfaro's alleged

misrepresentation regarding previous fraud claims.

8.  Edward A. Gillette ("Edward"): The Court, having reviewed the relevant integratory responses, that the majority of Edward's responses are covered under the Bespeaks Caution Doctrine as the statements identified were written or oral statements used to predict success of the wells for which Edward invested. Edward did however indicate that "[p]lainitff asked Brian Alfaro whether all [sic] Alfaro had paid all contractor bills, whether Alfaro owed any money to anyone. Alfaro responded by saying that all bills were paid, that the wells were debt free, and that he had paid for all construction." Defense Exhibit No. 136. Interrogatory No. 2. The problem with this statement is that it does not indicate that Edward made his decision to invest based on Alfaro's alleged misrepresentation regarding debt and bill status of wells. Further, the statement does not indicate what wells Edward was asking about when talking to Alfaro.

9.  Michael Covington ("Covington"): The Court finds that all statements in Convington's interrogatory responses are covered under the Bespeaks Caution Doctrine as the statements identified were written or oral statements used to predict success of the wells for which Covington invested.

The Court has also reviewed the interrogatory responses of the non-testifying Plaintiffs and finds that the following Plaintiffs cannot recover under fraud because their responses where either not-specific enough to satisfy the elements of fraud, were mere conclusory statements, and/or the responses were covered under the Bespeaks Caution Doctrine:

1.  Frederick Patek

2.  Geraldine Patek

3.  Joseph Hart

14

4. Frederick Johnston

5. Milan Knezovich 11

6. Fountaingates Investment Group

7. Broc Yakel

For the following non-testifying Plaintiffs, the Court finds that these Plaintiffs cannot recover under fraud for the stated reasons:

1. Ed McPherson ("McPherson"): McPherson cannot recover based on his interrogatory responses because Plaintiff failed to provide any interrogatory responses.

2. Quackenbush Petroleum LLC ("Quackenbush"): Plaintiffs offered the following response for all of Quackenbush's relevant interrogatory responses:

> Please see documents produced with this response and throughout the life of this litigation as Plaintiffs' Exhibits 1-49 in the state temporary injunction hearing and as Plaintiffs' Exhibits 1-44 in the federal preliminary injunction hearing, as well as Mr. Quackenbush's testimony found in Exhibit 12 of Book One on Request for Preliminary Injunction Hearing, which contains the transcript from the Temporary Injunction Hearing held on June 1-2, 2015 in the state court case, Cause No. 2015-CI-06991 in the 288th Judicial District Court in Bexar County, Texas.

This response is simply unacceptable as the Court is not required to conduct a fishing expedition to find evidence that supports Quackenbush's fraud claim. This is the burden of the Plaintiff, to prove up and establish his case, not the burden of the Court.

3. Buddy Walls: The Court finds that Buddy Walls has already recovered by virtue of his Wife's, Sharon Walls, recovery under the Couple's fraud claims.

4. Lillian Salmon: The Court finds that Lillian Salmon has already recovered by virtue of her Husbands, James "Buford" Salmon, recovery under the Couple's fraud

claims.

Plaintiffs also urge that the Court can and should infer Plaintiffs' actual reliance on Defendants' misrepresentations. To further this argument, Plaintiffs point the Court to a number of cases that apparently authorize this Court to infer reliance based on the circumstances present.[2] In *Chandler v. Butler*, plaintiff asserted that the defendant induced plaintiff to sell shares of stock to plaintiffs through fraudulent representations. 284 S.W.2d 388, 389 (Tex. Civ. App.—Texarkana 1955, no writ). The *Chandler* court noted that:

> It (fraud) is not, in its nature, discernible by the direct evidence of the senses, and is usually so covert and concealed, or is attended with such attempts at concealment, as to be incapable of proof otherwise than by circumstantial or presumptive evidence. Its existence, in a given case, may be proved, either by intrinsic evidence of unfairness in the transaction itself, or by evidence of facts and circumstances attending it, which, by the ordinary tests by which we judge of the motives to action, appear inconsistent with an honest purpose.

*Chandler*, 284 S.W.2d at 396 (quoting 20 Tex. Jur. at 159–60). The *Chandler* court also focused on the failure of a defendant to produce evidence and essentially explain his actions and reasoning. "The failure of a party to take advantage of an opportunity to explain inculpatory circumstances is evidence against him, and his failure to produce evidence in his possession which might have rebutted a presumption against him strengthens such presumption." *Id.* at 397. Thus, even though there was a lack of direct evidence, the court found fraud based on a number of "logical inferences." *Id.* at 398.

---

[2] Plaintiffs also provide a string cite of cases that stand for the proposition that the elements of fraud can be inferred. *See, e.g.*, **W.L. Lindemann Operating Co., Inc. v. Strange**, 256 S.W.3d 766, 776 (Tex. App.—Fort Worth 2008, pet. denied) ("Fraud is usually not discernible by direct evidence and is usually so covert or attendant with such attempts at concealment as to be incapable of proof other than by circumstantial evidence.") (citing **Cotten v. Weatherford Bancshares, Inc.**, 187 S.W.3d 687, 707 (Tex. App.–Fort Worth 2006, pet. denied); *see also* **Spoljaric v. Percival Tours, Inc.**, 708 S.W.2d 432, 435 (Tex. 1986); **Weinberger v. Longer**, 222 S.W.3d 557, 562 (Tex. App.–Houston [14th Dist.] 2007, pet. denied); **Matis v. Golden**, 228 S.W.3d 301, 306 (Tex. App.–Waco 2007, no pet.) ("Fraud usually is not susceptible to direct proof; it invariably must be proven by circumstantial evidence."); **Anderson, Greenwood & Co. v. Martin**, 44 S.W.3d 200, 215 (Tex. App.–Houston [14th Dist.] 2001, pet. denied) (stating that proving fraud often requires inferences based upon circumstantial evidence). For the reasons stated in the Court's analysis of *Chandler*, the Court does not find that the cases presented in this string cite are dispositive of the issue before the Court.

Plaintiffs also cite the Court to ***Anderson v. Anderson***, a case in which Jewell Esther Anderson ("Jewell") deeded her homestead to one of the defendants for consideration of "the adequate care and maintenance of [the plaintiff] during the remainder of [her] lifetime," but the defendant did not in fact follow through with said consideration. 620 S.W.2d 815, 816–17 (Tex. Civ. App.—Tyler 1981, no writ). The ***Anderson*** court determined that there was "evidence of probative force to support the court's implied findings of fraud." ***Id***. at 819. Further, the court noted that "the fact that [the plaintiff] executed the deed to her homeplace for the sole consideration of the representation for care and maintenance during her lifetime is evidence of her reliance on such representation." ***Id***.

The Court disagrees that ***Anderson*** and ***Chandler*** apply the facts present in the case at bar. In ***Chandler***, the primary issue was identifying an actual misrepresentation that amounted to fraud, not an issue here. ***Chandler***, 284 S.W.2d at 397. In the case at bar, there was sufficient direct evidence of a misrepresentation. For example, there were testimony and trial exhibits devoted to the numerous commissions Alfaro took in stark contrast to the contracts with Plaintiffs that stated there would be no commission-based payments. Here, the issue is Plaintiffs' failure to demonstrate actual reliance because certain Plaintiffs failed to produce documentation and/or did not have testimony elicited from them at trial that would demonstrate actual reliance. Second, while the ***Chandler*** court noted that evidence of fraud can be "so covert and concealed" that only circumstantial evidence is available, Plaintiffs have not convinced the Court that the evidence of reliance here was "so covert and concealed" that circumstantial evidence was the only type of evidence available. ***Id***. Lastly, to justify its use of circumstantial evidence, the ***Chandler*** court seemed to consider relevant the defendant's failure to produce evidence to rebut the fraud. ***Id***. Here, the Court believes that Defendants attempted to rebut the allegations against them and the

fraud claims. Thus, the Court finds that the *Chandler* case does not apply.

Turning to *Anderson*, this Court takes issue with the statement regarding reliance as it relates to the instant case. In *Anderson*, the court inferred reliance based on "[t]he fact that Jewel Esther Anderson executed the deed to her homeplace for the sole consideration of the representation for care and maintenance during her lifetime[.]" *Anderson*, 620 S.W.2d at 819. Stated differently, the care and maintenance was the benefit of the bargain, which ultimately, Jewel did not receive. Here, Plaintiffs, for example, who purchased a working interest in exchange for their investment testified that they received exactly what they purchased. *See e.g.,* (Trial Audio, 167–68:18–5, April 11, 2017); (Trial Audio, 18–19: 22–4, 143–44: 7–23, April 12, 2017).

The Court also notes that Plaintiffs cited and direct this Court to *Libhart v. Copeland*, 949 S.W.2d 783 (Tex. App.—Waco 1997, no writ). In *Libhart*, a church loaned money from the sale of its sanctuary and dissolution of the church to defendants to purchase a new home. *Id.* at 790–91. In exchange for the money, defendants agreed to sell the adjourning parsonage to repay the loan. The church subsequently forgave the loan and requested that defendants donate the proceeds of the sale of the parsonage to charity. *Id.* Defendants, instead, sold the parish to their daughter and son-in-law and did not give any money to charity. The *Libhart* court stated the following regarding reliance:

> The church voted to loan them the money based on [the pastor's] affirmative representations that they would repay it with the parsonage proceeds. [The pastor's wife] was present and did not refute these representations. From this we conclude that some probative evidence exists to support a finding that the church relied upon [the pastor's wife's] failure to disclosure material facts. *Id.* (emphasis added).

*Id.* at 801. The Court, however, does not see a bridge between the facts in this case and the case at bar. For the same reasons addressed above for the *Chandler* case, the Court finds that the *Libhart* case is not dispositive of the issues.

**CONCLUSION**

IT IS THEREFORE ORDERED that Plaintiffs' Motion to Alter or Amend Final Judgment (ECF No. 374) ("Motion to Alter or Amend") is DENIED.

All relief not granted herein is DENIED.

IT IS SO ORDERED.

# # #