**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: August 17, 2018.**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 15-51396-CAG |
| | § | |
| PRIMERA ENERGY, LLC, | § | CHAPTER 11 |
| Debtor. | § | |
| | | |
| FREDERICK PATEK; | § | |
| GERALDINE PATEK; | § | |
| JASPER COMPISE; | § | |
| WILLIAM CRAWFORD; | § | |
| MICAEL COVINGTON; | § | |
| RICK GRIFFEY; | § | ADVERSARY NO. 15-05047-CAG |
| ED MCPHERSON; | § | |
| DIETER JANSEN; | § | |
| QUACKENBUSH PETROLEUM LLC; | § | |
| JAMES REILEY; | § | |
| BETTY REILEY; | § | |
| RICK REILEY; | § | |
| VINCENT J. GILLETTE; | § | |
| MARJORIE A. GILLETTE; | § | |
| THOMAS J. GILLETTE; | § | |
| EDWARD A. GILLETTE; | § | |
| SHARON WALLS; | § | |
| BUDDY WALLS; | § | |
| DC OIL COMPANY, INC.; | § | |
| BUFORD SALMON; | § | |
| LILLIAN SALMON; | § | |
| JOSEPH HART; | § | |

1

| | |
|---|---|
| BRIAN HUBER; | § |
| DAVID DAVALOS; | § |
| DANIEL DAVALOS; | § |
| FREDERICK JOHNSTON; | § |
| MILAN KNEZOVICH 11; | § |
| FOUNTAINGATES INVESTMENT GROUP; | § |
| JAMES PETERS; and | § |
| BROC YAKEL, | § |
|     Plaintiffs, | § |
| | § |
| V. | § |
| | § |
| BRIAN K. ALFARO; | § |
| KING MINERALS, LLC; | § |
| SILVER STAR RESOURCES, LLC; | § |
| 430 ASSETS, LLC, A MONTANA LLC; | § |
| KRISTI MICHELLE ALFARO; | § |
| BRIAN AND KRISTI ALFARO, AS | § |
| TRUSTEES OF THE BRIAN AND KRISTI | § |
| ALFARO LIVING TRUST; and | § |
| ANA AND AVERY'S CANDY | § |
| ISLAND, LLC, | § |
|     Defendants. | § |

**ORDER DENYING PREVAILING PLAINTIFFS' MOTION FOR RECONSIDERATION OF ORDER ADOPTING IN PART AND DENYING IN PART AMENDED RECEIVER'S REPORT AND RECOMMENDATION (ECF NO. 450)**

Came on for consideration Prevailing Plaintiffs' Motion for Reconsideration of Order Adopting in Part and Denying in Part Amended Receiver's Report and Recommendation (ECF No. 450) (the "Motion for Reconsideration"). The Receiver filed the Receiver's Response to Prevailing Plaintiffs' Motion for Reconsideration (ECF No. 451). Prevailing Plaintiffs filed Prevailing Plaintiffs' Reply to Receiver's Response to Motion for Reconsideration of Order Adopting in Part and Denying in Part Amended Receiver's Report and Recommendation (ECF No. 452). Finally, on August 8, 2018, the Receiver filed, with leave of the Court, his Sur-Reply Regarding Prevailing Plaintiffs' Motion for Reconsideration (ECF No. 455). The Court took the

matter under advisement without the necessity of a hearing.[1]

### PROCEDURAL BACKGROUND

On June 2, 2015, Lamont A. Jefferson was appointed by the Honorable Judge Antonia Arteaga to serve as the receiver for Primera Energy, LLC ("Primera"), Alfaro Oil and Gas, LLC ("Alfaro Oil and Gas"), and Alfaro Energy, LLC ("Alfaro Energy"), in Cause No. 2015-CI-06691, *Frederick Patek, et al. v. Brian K. Alfaro, Primera Energy, LLC, Alfaro Oil and Gas, LLC and Alfaro Energy, LLC*, 288th Judicial District Court, Bexar County, Texas. On June 3, 2015, Primera filed for chapter 11 bankruptcy protection, Case No. 15-51396-cag, in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division. The remainder of the state-court action was removed to this Court in this Adversary Proceeding, Case No. 15-05047-cag, on June 19, 2015 (ECF No. 54).

On December 29, 2017, the Court entered a Memorandum Opinion (ECF No. 369), and Final Judgment (ECF No. 370) in this Adversary Proceeding. In the Final Judgment, the Court ordered that certain Plaintiffs (the "Prevailing Plaintiffs") prevailed against all Defendants on their claims for common law fraud, fraud in the inducement, fraud in the real estate transaction, and negligent misrepresentation. The Court further ordered Prevailing Plaintiffs' request for actual damages for $7,989,526.75. The Court also granted Prevailing Plaintiffs' request for a constructive trust for Defendants' violation of Tex. Bus. & Comm. Code § 24.0052. Finally, the Court ordered that Defendants provide an accounting for the following property: (1) Salary and compensation transferred to the Living Trust beginning March 2016; (2) Bentley purchased within the last two years with a purchase price of $189,000.00; and (3) Cadillac purchased in May 2013 for

---

[1] Unless otherwise defined herein, capitalized terms contained herein will carry the same meaning as the terms in the Court's Oral Ruling (audio provided at ECF No. 447) and the Court's Order Adopting in Part and Denying in Part Amended Receiver's Report and Recommendation (ECF No. 446).

$33,705.00.

On March 29, 2018, the Court amended the Final Judgment to limit liability for common law fraud, fraud in the inducement, fraud in the real estate transaction, and negligent misrepresentation to Defendant Brian Alfaro ("Alfaro") and Defendants (1) Primera Energy, LLC, (2) Alfaro Oil and Gas, LLC, and (3) Alfaro Energy, LLC (collectively referred to as "Alfaro Entities") (ECF No. 400). On April 11, 2018, Defendants filed an Amended Notice of Appeal (ECF No. 407).

## FACTS

The facts as presented by the Receiver are not disputed. The assets under receivership are nearly all derived from the operations of two oil and gas projects involving fields in Louisiana: (1) the East Moss Lake/LNG project operated by Jordan Oil Company, Inc. ("Jordan Oil"), and (2) the North Cankton well project operated by Mack Energy Company ("Mack Energy") (the "Assets"). In each case, Alfaro, through Alfaro Oil & Gas, acquired a working interest and, in each case, solicited investors to subdivide the interest. The operating agreements for each prospect prohibit the assignment or subdivision of a participant's interest. Alfaro nevertheless engaged in a nationwide sales effort to sign up participants who funded the expenses necessary to participate in these ventures. It appears that Alfaro solicited funds that were far in excess of the amount needed to participate in each project.

With respect to the North Cankton prospect, Alfaro signed an operating agreement dated February 1, 2009 with Alpine Exploration whereby Alfaro purchased a 31.5% working interest and a 22.96% revenue interest. The accompanying Participation Agreement also includes an authorization for expenditure (AFE) for "drilling and completion" at a total cost of $760,300 thereby rendering Alfaro's participation cost to have been approximately $240,000. Rather than

4

pay the participation cost himself, Alfaro formed an ostensible "joint venture" and solicited participants to contribute to the effort. Moreover, Alfaro also told investors he would charge $601,276 to acquire the prospect, and drill and complete the well—approximately $360,000 more than he committed to the lessor and operator that he would participate at.

Each of the investors he solicited funds from (the "North Cankton Investors") signed a subscription agreement identifying the number of "interests" being purchased with their investment. In many instances, the amount of the "interest" being acquired is either blank, or modified with interlineations. According to the Receiver, the records that he was provided are incomplete; however, the records reflect that Alfaro collected from investors at least $817,232—approximately $577,000 more than it cost Alfaro to participate in the North Cankton prospect.

As to the East Moss Lake/LNG prospect, Alfaro signed three separate operating agreements. On February 26, 2009, Alfaro acquired a 10% interest in East Moss Lake LNG for a cost of $32,500. On the same day, Alfaro also purchased a 10% interest in the East Moss Lake Attic for a cost of $34,500. On May 4, 2010, Alfaro purchased a 22% interest in the East Airport Prospect for a cost of $187,000. The total cost for Alfaro to participate in the East Moss Lake/LNG prospect should have been a total of $254,000. Using the same tactics used to fund the North Cankton prospect, Alfaro collected at least $1,264,179 from investors (the "East Moss Lake/LNG Investors")—over $1 million more than it cost him to participate. Moreover, Alfaro signed a "turnkey contract" with his own company that obligated the joint venture to pay $1,179,256 for his services to "acquire . . . drill and complete" the well.

Both prospects resulted in producing wells and both operators, Jordan Oil and Mack Energy, issued revenue checks to Alfaro. Alfaro then distributed sums of the revenue checks to the investors who acquired "units" (the "North Cankton and East Moss Lake/LNG Investors");

5

however, it is unclear to the Receiver on what basis Alfaro calculated each investor's proportionate share of revenue proceeds.

On February 20, 2013, Jordan Oil sued Alfaro Oil & Gas and Alfaro in a concursus proceeding filed in the Parish of Calcasieu, Louisiana, styled *Case No. 2013-08899F, Jordan Oil Company, Inc. v. Alfaro Oil and Gas, LLC,* in the 14th Judicial District Court. Jordan alleged that Alfaro breached the operating agreement by fractioning off his participation interests to outside investors. The suit further alleges that because of Alfaro's previous prosecution by the Financial Industries Regulatory Authority ("FINRA"), there were substantial questions about whether Alfaro raised investor funds properly, and whether he was paying his investors the amounts that Alfaro owed them. At the time of filing, Jordan Oil represented that it was withholding the sum of $14,467.70, which represented the amounts that Jordan Oil otherwise owed to Alfaro based on the operating agreements. Jordan Oil requested leave to deposit that sum in the registry of the court. The concursus proceeding also resulted in an order, entered without objection, requiring all proceeds from well operations that would otherwise be owed to Alfaro be instead deposited into the court's registry.

According to Alfaro's accounting expert, Mike Turner ("Turner"), Alfaro continued to pay the East Moss Lake/LNG Investors their proportionate share of production, even after Jordan Oil suspended payments to Alfaro. In the Receiver's opinion, these payments were made using funds obtained by Alfaro from new investors, including the Plaintiffs in this Adversary Proceeding (the "Named Plaintiffs"). The Receiver notes, however, that the precise source of any funds used by Alfaro to pay these investors is most likely impossible to know.

Turner concluded that process resulted in the East Moss Lake/LNG Investors receiving $577,655.91 in funds from some source other than East Moss Lake/LNG well production. This

6

conclusion, however, assumes that Jordan Oil suspended payments to Alfaro beginning January 2012.[2] The suit by Jordan Oil was brought in February 2013, and at that time, Jordan represented to be holding $14,467.70. Thus, according to the Receiver, if Jordan's "suspense" date is February 2013, then funds potentially traceable to "new" investors totals $242,803.05.

Shortly after the Receiver's appointment, the concursus proceeding was settled. The Receiver asked this Court for authorization to receive all funds associated with the settlement. (ECF No. 135). After payments of expenses associated with the settlement, the net amount deposited into the receivership account was $613,819.23. An order of dismissal of the concursus proceeding was entered by the Louisiana Court on November 5, 2015. (ECF No. 135).

## THE COURT'S ORDER

On March 26, 2018, the Receiver filed his Amended Receiver's Report and Recommendations (ECF No. 396). On June 4, 2018, the Court held a hearing on the Amended Receiver's Report and Recommendations and on July 2, 2018, the Court issued an oral ruling on the matter and contemporaneously filed an Order Adopting in Part and Denying in Part Amended Receiver's Report and Recommendation (ECF No. 446) (the "Order") which ordered distribution of the liquid receivership in the following order and manner:

> 1. Fees and expenses of the Receiver through March 30, 2018 for $243,675.13 as ordered by the Court's Order Granting Jefferson Cano's First Amended Application for Compensation and Reimbursement of Expenses (ECF No. 442).

> 2. $100,000 shall be maintained in the receivership in cash to pay remaining expenses of receivership, including fees of the Receiver (as approved following application and notice) and potential AFEs. The Receiver is given discretion to pay AFEs up to the amount of $25,000 per month without the time and expense necessary to make application to the Court. The Receiver will promptly report any such payment to the Court.

---

[2] The Receiver notes that Jordan eventually delegated all payment duties to a third-party processor called Central Crude. The Receiver believes that this change may explain Mr. Turner's assumption that Jordan suspended payments in January 2012.

> 3. The sum of $242,803.05 shall be returned to the Named Plaintiffs on a pro rata basis. Said sum should be paid to Plaintiffs' counsel who will distribute the sum to all Named Plaintiffs on a pro rata basis according to the amount of their investment as represented to the Court in the related Adversary Proceeding (ECF No. 296).
>
> 4. The remaining amount in the liquid receivership shall be returned to North Cankton and East Moss Lake/LNG Investors for their investments in the Assets pro rata based upon documented and credible claims submitted to the Receiver on or before the claim bar date. The determination of whether such claims are valid and should be paid will be made by the Receiver.
>
> 5. To the extent that any funds remain after the aforementioned payments, the remainder of the liquid receivership shall be distributed to Prevailing Plaintiffs as a source of recovery for the Final Judgment pro rata based upon each Prevailing Plaintiffs' awarded damages.

ECF No. 446. The Court, having considered each Parties' papers and each argument, whether or not addressed herein, finds that the Motion for Reconsideration should be denied.

## PREVAILING PLAINTIFFS' CONTENTIONS

In their Motion to Reconsider, Prevailing Plaintiffs ask the Court to revise the Order and distribute the liquid receivership as follows:

> 1. Award fees and expenses of the Receiver through March 30, 2018 for $243,675.13 first out of the $748,747.41 in receivership earnings;
>
> 2. Reserve $100,000 to be maintained in the receivership in cash to pay remaining expenses of receivership, including fees of the Receiver (as approved following application and notice) and potential AFEs;
>
> 3. Award the remaining earnings of the liquid receivership to the Prevailing Plaintiffs in the amount of $405,072.28, as well as all monies retained by the Receiver and/or received by the Receiver for the disposition of the North Cankton and East Moss Lake/LNG interests, less any qualified expenses of the Receiver;
>
> 4. Award the sum of $242,803.05 to the Named Plaintiffs on a pro rata basis out of the non-earnings of the receivership property. Said sum should be paid to Plaintiffs' counsel who will distribute the sum to all Named Plaintiffs on a pro rata basis according to the amount of their investment as represented to the Court in the related Adversary Proceeding (ECF No. 296); and
>
> 5. Award the remaining amounts of the non-earnings in the liquid receivership to be returned to North Cankton and East Moss Lake/LNG Investors for their

8

investments in the Assets pro rata based upon documented and credible claims submitted to the Receiver on or before the claim bar date.

ECF No. 450. Prevailing Plaintiffs urge the Court to reconsider the Order because "a fundamental error was committed in the Court's analysis which led to an incorrect result in the distribution of the funds held in Receivership." Specifically, Plaintiffs challenge the Court's interpretation of a Texas case, ***Waters-Pierce Oil Co. v. U.S. & Mexican Trust Co.,*** 99 S.W. 212, 215 (Tex. Civ. App.—Texarkana 1906, writ ref'd), which the Court cited in support of distributing the liquid receivership. Next, Prevailing Plaintiffs argue that the Court wrongfully applied rules of equity when determining the distribution of the liquid receivership and such application was inconsistent, and therefore in violation of chapter 64 of the Texas Civil and Practice Remedies Code. Third, Prevailing Plaintiffs assert that, according to at least one Texas case, the Court abused its discretion by giving priority to claims not identified Texas Civil and Practice Remedies Code § 64.051(a). Finally, Prevailing Plaintiffs argue that equity dictates that the Court award claims to all Named Plaintiffs from non-earnings.

## ANALYSIS

Prevailing Plaintiffs challenge the Court's interpretation of a Texas case, ***Waters-Pierce Oil Co. v. U.S. & Mexican Trust Co.***, 99 S.W. 212, 215 (Tex. Civ. App.—Texarkana 1906, writ ref'd), contending that the Court's interpretation of the case is too broad. The Court cited to ***Waters-Pierce*** as authority for the Court to deviate from priority scheme enumerated under Texas Civil Practice and Remedies Code § 64.051(a) with respect to claims not specifically identified under section 64.051(a). Section 64.051 dictates the disbursement of earnings of property held in receivership under chapter 64:

> (a) A receiver shall apply the *earnings* of property held in receivership to the payment of the following claims in the order listed:
> (1) court costs of suit;
> (2) wages of employees due by the receiver;

9

> (3) debts owed for materials and supplies purchased by the receiver for the improvement of the property held as receiver;
> (4) debts due for improvements made during the receivership to the property held as receiver;
> (5) claims and accounts against the receiver on contracts made by the receiver, personal injury claims and claims for stock against the receiver accruing during the receivership, and judgments rendered against the receiver for personal injuries and for stock killed; and
> (6) judgments recovered in suits brought before the receiver was appointed.
>
> (b) Claims listed in this section have a preference lien on the earnings of the property held by the receiver.
>
> (c) The court shall ensure that the earnings are paid in the order of preference listed in this section.

Tex. Civ. Prac. & Rem. Code Ann. § 64.051 (West 2018). Using the Court's interpretation of *Waters-Pierce*, the Court can prioritize the payment of claims according to rules of equity where claims to receivership assets exist, but are not specifically identified under section 64.051(a). Plaintiffs contend that the application *Waters-Pierce* is much more narrow and limited to circumstances where the competing claims fall within the same class and such class of claims are identified in section 64.051(a).

*Waters-Pierce* involves two claimant-appellants contending that the lower court erred in subordinating their claims to others in the same class of claims. *Waters-Pierce Oil Co.*, 99 S.W. at 212. Specifically, the appellants argued that because the manner of disbursing earnings was dictated by statute, and the statute "embrac[ed] such claims as those of these [claimants]," the lower court violated the statute. The *Waters-Pierce* court disagreed. The court begins its analysis by discussing only the appellants' claims, identifying them as claims "based on judgments obtained in suits brought after the appointment of the receiver" and therefore not provided for in the statute:

> [I]n our opinion the *claims of these appellants* do not come within any class enumerated in said statute. The only one of the classes designated in the statute which could possibly be claimed to include claims of the character of these appellants in the sixth, which only embraces judgments recovered against the

10

> corporation in suits brought before the appointment of a receiver in the action, and the record shows *appellants' claims* to be based on judgments obtained in suits brought after the appointment of the receiver.

*Id.* at 215 (emphasis added). Immediately following this discussion, ***Waters-Pierce*** then articulates the rule which this Court relied on and Plaintiffs contend has a limited application:

> But *these claims* not being within any class designated in said [statute], the court below could not be controlled by the provisions of said [statute] prescribing the order in which certain designated claims should be paid. . . . Hence the court below . . . had the authority, under its general equitable powers, to decide such question in accordance with what it deemed equitable and just under the circumstances relating to such claims . . . .

*Id.* (emphasis added). Thus, according to the ***Waters-Pierce*** court, because the appellants' claims did not fall under any type of class designated in the statute, the priority scheme dictated by a former version of 64.051(a) did not apply to these claims. Stated differently, because these claims were not provided for in the statute, the court's treatment of the claims was governed by the court's discretion and rules of equity. The ***Waters-Pierce*** court then goes on to apply the rule approving the lower court's subordination of appellants' claim to others placed in the same class. ***Id.***

As previously noted, Prevailing Plaintiffs suggest that the Court's application of this rule is too broad; rather the rule articulated by the ***Waters-Pierce*** court should only be applied to the facts before the ***Waters-Pierce*** court. The Court disagrees. The plain language of the rule refers only to "these claims," which are previously identified the appellants' claims which "[did] not come within any class enumerated in said statute." *Id*. The ***Waters-Pierce*** court articulates this rule in the context of a type of claim not identified in the statute. The plain language of the rule does not contemplate competing claims within the same class of which is not identified in the statute.

Next, Prevailing Plaintiffs argue that the Court wrongfully applied rules of equity when determining the distribution of the liquid receivership and such application was inconsistent, and

11

therefore in violation of chapter 64 of the Texas Civil and Practice Remedies Code. Section 64.004 states "the rules of equity govern all matters relating to the appointment, powers, duties, and liabilities of a receiver and to the powers of a court regarding a receiver" unless inconsistent with chapter 64 or other general law. The Court's authority to deviate from section 64.051(a) with respect to claims not identified therein and treat such claims according to rules of equity is consistent with § 64.004. Section 64.051(a) dictates what priority specific types of claims are to be paid using earnings of property held in receivership. Section 64.051(a) does not mandate that earnings of property held in receivership *only* be used to pay these types of claims. Moreover, as the Court previously discussed, Texas case law permits the court to apply rules of equity when determining priority of claims not identified in section 64.051(a). Accordingly, the Court does not agree that subordinating Prevailing Plaintiffs' claims to that of the Named Plaintiffs or North Cankton and East Moss Lake/LNG investors is a violation of chapter 64 of the Texas Civil Practice and Remedies Code.

Third, Prevailing Plaintiffs assert that, according to at least one Texas case, ***RSS Rail Signal Systems Corp. v. Carter Stafford Arnett Hamada & Mockler, PLLC***, 458 S.W.3d 72 (Tex. App.—El Paso 2014, no pet.), the Court abused its discretion by giving priority to claims not identified Texas Civil and Practice Remedies Code § 64.051(a). The Court disagrees. ***RSS Rail Signal Systems*** involved a receiver appointed under Texas Civil Practice and Remedies Code § 31.002.[3] ***RSS Rail Signal Sys.***, 458 S.W.3d at 76. The Court does not agree that chapter 64 provisions apply to receivers appointed under other chapters of the Texas Civil Practice Remedies

---

[3] Section 31.002(a) provides "a judgment creditor is entitled to aid from a court of appropriate jurisdiction through injunction or other means in order to reach property to obtain satisfaction on the judgment if the judgment debtor owns property, including present or future rights to property that is not exempt from attachment, execution, or seizure for the satisfaction of liabilities." Tex. Civ. Prac. & Rem. Code Ann. § 31.002(a) (West 2018). Subsection (b)(3) authorizes the court to "appoint a receiver with the authority to take possession of the nonexempt property, sell it, and pay the proceeds to the judgment creditor to the extent required to satisfy the judgment." *Id.* § 31.002(b)(3). Receivers appointed under chapte 31 are also referred to as a "turnover receiverships."

12

Code.[4] *See Flooring Sys., Inc. v. Chow,* Bankr. No. 08–40182, Adv. Proc. No. 10-4030, 2012 WL 1898951 at *2 (E.D. Tex. May 24, 2012), *aff'd*, 765 F.3d 518 (5th Cir. 2014) (rejecting defendant's arguments grounded in cases involving receivers appointed under chapter 64 of the Texas Civil and Practice Remedies Code because the receiver at issue was appointed under chapter 31); *cf. Schultz v. Cadle Co.*, 825 S.W.2d 151, 154–55 (Tex. App.—Dallas 1992, writ denied)[5] (rejecting arguments that chapter 64 requirements for appointing a receiver apply to receivers appointed under chapter 31). Moreover, chapter 31 contains no reference to chapter 64 for purposes of disbursing earnings of property held in receivership. *Cf. id.* at 155. ("Indeed, if the Texas Legislature had intended for the appointment of receivers in turnover proceedings to meet the requirements of the receivership statutes, it would have provided for or at least referred to these requirements in the turnover statute."). Thus, the Court does not agree that *RSS Rail Signal Systems* provides a proper basis for asserting that this Court abused its discretion by giving priority to claims not identified under section 64.051(a).

Finally, Prevailing Plaintiffs argue that equity dictates that the Court award claims to all Named Plaintiffs from non-earnings because (1) there is "no clear rule of law that dictates whether or not there is a time frame of when monies recovered by the Receiver are considered 'earnings' within the statute"; and (2) but for the receivership, this money would not be present for the Court to distribute. With respect to the issue of whether section 64.051(a) imposes a timeframe of when

---

[4] The Court recognizes that in its Oral Ruling, it relied on *RSS Rail Signal Systems* for the proposition that "[r]eceiver fees are considered 'court costs' for purposes of section 64.051 and therefore, are given first priority over all other enumerated claimants." Despite the fact that *RSS Rail Signal Systems* applies to a receiver appointed under chapter 31, it is well-established Texas law that receiver fees are considered "court costs" for purposes of section 64.051(a). *Jones v. Strayhan,* 159 Tex. 421, 425 (1959) (classifying receiver fees as "court costs" under a former version of section 64.051(a)).

[5] Typically, the "writ denied" indicates that the Texas Supreme Court is not satisfied with the court of appeal's opinion, but denies the application for writ of error on the basis that the application presents no reversible error. In *Schultz v. Cadle Co.*, the Texas Supreme Court denied the application for writ of error noting that the court neither approved nor disapproved of the court of appeals' opinion. *Schultz v. Cadle Co.*, 852 S.W.2d 499, 499 (Tex. 1993) (per curiam).

13

monies recovered by the Receiver are considered earnings, the Court previously addressed this in its Oral Ruling on July 2, 2018:

> Section 64.051(a) confines the types of "earnings" subject to the provision's priority scheme as "earnings of property held in receivership." Thus, while the provision does not expressly impose a time limit as to when earnings must be earned for the earnings to fall under section 64.051(a), the provision does limit the types of earnings that can be subjected to the priority scheme as to those earnings earned from property held in receivership. This conclusion is consistent with early case law interpreting the former version of section 64.051(a) which holds that the provision only applies to earnings acquired by the receiver while the assets were under receivership. ***Tex. Steel Co. v. Huey & Philp Hardware Co.***, 79 S.W.2d 636, 639 (Tex. Civ. App.—El Paso 1935, writ dism'd) (citation omitted). Accordingly, the Court finds that section 64.051 applies only to earnings earned by the Assets subsequent to the creation of the receivership.

Second, as to Prevailing Plaintiffs' contention that "but for the receivership, this money would not be present for the Court to distribute[,]" it is not clear to the Court why Prevailing Plaintiffs are advocating that "equity mandates that all of the Named Plaintiffs be awarded at the very least $242,000 out of the proceeds the Court has deemed 'non-earnings' of the receivership" other than to allow for Prevailing Plaintiffs to recover some portion of their judgment without harm to the Named Plaintiffs. The Court's Oral Ruling and Order, recognizing the Named Plaintiffs' equitable right to the liquid receivership, disburses earnings to the Named Plaintiffs prior to payment to any other class other than the costs of the Receiver and the $100,000 reserve:

> As previously explained, the sum of $242,803.05 represents the amount of money Alfaro paid the East Moss Lake/LNG investors after Jordan Oil suspended production payments to Alfaro. For reasons stated below, the Court adopts this recommendation.
>
> * * *
>
> [T]he Court finds that payment to the Named Plaintiffs in advance of the North Cankton and East Moss Lake/LNG Investors is appropriate under the circumstances and for the reasons described by the Receiver during the hearing. The Receiver noted that while the precise source of funds used by

14

>Alfaro to pay these investors is most likely impossible to know, it is likely that the payments were made using funds obtained by Alfaro from new investors, including the Named Plaintiffs in this Adversary Proceeding, and therefore, the Named Plaintiffs may have a legitimate right to the funds. (Trial Audio, June 4, 2018, 1:26:37). Furthermore, "everybody in the world, who had any interaction with Mr. Alfaro, had the right and the ability to bring suit against Mr. Alfaro. These Plaintiffs did, and because these Plaintiffs did . . . they are the only claimants out of that fund that we have to be concerned about . . . ." (*Id*. at 1:26:45–27:08).

(Oral Ruling Audio, July 2, 2018, 2:30:55–33:31).

The Court further notes that Prevailing Plaintiffs propose that North Cankton and East Moss Lake/LNG Investors be paid pro-rata using a fixed amount of approximately $400,000 while Prevailing Plaintiffs collect on their judgement from earnings currently in the receivership account plus any proceeds resulting from the sale of the non-liquid assets. The Court stands behind its reasoning with respect to why North Cankton and East Moss Lake/LNG Investor claims should be satisfied in full before payment on Prevailing Plaintiffs' claim should be paid:

>Last, payment to North Cankton and East Moss Lake/LNG Investors for their investments is appropriate under the circumstances. First, the Assets comprising the receivership were purchased using funds belonging to the North Cankton and East Moss Lake/LNG Investors, not funds belonging to Prevailing Plaintiffs; therefore, without the investment of these funds, the receivership estate would not exist. Moreover, to the extent that the Prevailing Plaintiffs' funds were applied to North Cankton and East Moss Lake/LNG transactions, those Prevailing Plaintiffs will be reimbursed for that portion of their investment. Second, the Prevailing Plaintiffs received a Final Judgment in exchange for their investments and are entitled to recover under the Final Judgment. The North Cankton and East Moss Lake/LNG Investors' source of recovery, as far as the Court is aware, is limited to the receivership estate. If the Court permitted payment of all residual earnings in the liquid receivership to the Prevailing Plaintiffs, the Court would allow the use of funds rightfully belonging to another as a source of recovery for a competing claimant who holds their own remedy in the form of a valid judgment, which, to this Court, is contrary to principles of equity.

(Oral Ruling Audio, July 2, 2018, 2:40:46–41:51).

## CONCLUSION

For these reasons stated above, the Prevailing Plaintiffs' Motion for Reconsideration of Order Adopting in Part and Denying in Part Amended Receiver's Report and Recommendation (ECF No. 450) is denied.

IT IS THEREFORE ORDERED that Prevailing Plaintiffs' Motion for Reconsideration of Order Adopting in Part and Denying in Part Amended Receiver's Report and Recommendation (ECF No. 450) is DENIED.

IT IS SO ORDERED.

# # #