

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: November 04, 2019.**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 15-51396-CAG |
| | § | |
| PRIMERA ENERGY, LLC, | § | CHAPTER 11 |
|     Debtor. | § | |
| | | |
| FREDERICK PATEK, et al., | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | ADVERSARY NO. 15-05047-CAG |
| | § | |
| BRIAN K. ALFARO, et al., | § | |
|     Defendants. | § | |

### ORDER DENYING DEFENDANTS' MOTION TO DESIGNATE ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL OUT OF TIME (ECF NO. 639)

Came on to be considered Defendants' Motion to Designate Items to be Included in the Record on Appeal Out of Time (the "Motion") (ECF No. 639)[1] and the Plaintiffs' Response (the "Response") (ECF No. 642). For the reasons stated herein, the Motion is DENIED.

---

[1] "ECF No." refers to the electronic case file number in this Adversary Proceeding unless otherwise noted.

1

**PROCEDURAL BACKGROUND**

Plaintiffs commenced this action by filing their lawsuit styled *Frederick Patek, Geraldine Patek, Jim Gregory, Cal Curtner, Lisa Simpson, Jasper Campise, Karen Smith, William Crawford, Mike Covington, Marc Keese, Mike McPherson, Ed McPherson, Wesley Crow, Dieter Jansen, Quackenbush Petroleum, James Reiley, Betty Reiley, Rick Reiley, Greg Shilts and Jana Shilts and on behalf of All Other Similarly Situated Investors of Defendants, "Screaming Eagle," "Montague Legacy" and "Buda Well" Investments vs. Brian K. Alfaro, Primera Energy, LLC, Alfaro Oil and Gas, LLC and Alfaro Energy, LLC*, in the 288th District Court for Bexar County on April 24, 2015 (the "State Court Action").

In the State Court Action, Plaintiffs sought and obtained a temporary restraining order ("TRO") against Brian Alfaro ("Alfaro"), Primera Energy, LLC ("Primera"), Alfaro Oil and Gas, LLC ("Alfaro O&G") and Alfaro Energy, LLC ("Alfaro Energy") on April 28, 2015. On June 2, 2015, the state court judge entered a temporary injunction against Defendants Alfaro, Primera, Alfaro O&G and Alfaro Energy.[2]

On June 3, 2015, Primera filed for relief under Title 11 of the United States Code commencing Bankruptcy Case No. 15-51396 (the "Bankruptcy Case"). On June 19, 2015, Alfaro, Primera, Alfaro O&G, Alfaro Energy, King Minerals, LLC ("King") and Silver Star Resources, LLC ("Silver Star") removed the State Court Action to this Court, commencing this Adversary Proceeding No. 15-05047 (the "Adversary"). Also, on June 19, 2015, Plaintiffs filed their Second Amended Petition in the State Court Action adding King and Silver Star as Defendants.

On July 13, 2015, Jason Searcy was appointed chapter 11 trustee for the estate of Primera

---

[2] The state court judge also appointed a receiver, Lamont Jefferson, for Alfaro O&G and Alfaro Energy. Mr. Jefferson took the position that as receiver for Alfaro O&G and Alfaro Energy, he was not authorized or required to represent Alfaro O&G and Alfaro Energy in this adversary proceeding. As such, the Court allowed Defendants' counsel to represent them.

2

in the Bankruptcy Case. On August 11, 2015, Plaintiffs filed their Application for Temporary Restraining Order and Temporary and Permanent Injunctions (ECF No. 22) (the "Application") in this Adversary, seeking relief against Alfaro, Primera, Alfaro O&G, Alfaro Energy, King and Silver Star. On August 14, 2015, Plaintiffs filed their Third Amended Complaint (ECF No. 29) in this Adversary adding the following Defendants to their Third Amended Complaint: 430 Assets, LLC ("430 Assets"); Kristi Michelle Alfaro ("Kristi Alfaro"); Brian Alfaro and Kristi Alfaro, as trustees for the Brian and Kristi Alfaro Living Trust ("Living Trust"); and Ana and Averys Candy Island, LLC ("Candy Island").

The Court held a hearing on the Application over the following five days: August 28, 2015; September 1, 2015; September 2, 2015; September 4, 2015; and September 15, 2015. The Court issued its Order Denying Plaintiffs' Application for Preliminary Injunction (ECF No. 98) on October 28, 2015. In its Order, the Court specifically noted that the Order only referenced those Defendants who were named in the Application to the Court and excluded those Defendants who had been added in later amended Complaints. Thus, the Order referred only to Defendants Alfaro, Primera, Alfaro O&G and Alfaro Energy.

Prior to trial, the Court also issued two Orders Granting, In Part, and Denying, In Part, Defendants' Motions to Dismiss (ECF Nos. 165 and 327). Pursuant to the Court's Orders on the Motions to Dismiss, the Court dismissed the following: (1) Plaintiffs' Texas Uniform Fraudulent Transfer Act ("TUFTA") claims against King and Candy Island; and (2) Plaintiffs' claims for breach of fiduciary duty against all Defendants.

The parties, therefore, proceeded to trial on the following remaining claims: (1) common law fraud and fraud in the inducement; (2) fraud in a real estate transaction; (3) negligent misrepresentation; (4) Deceptive Trade Practices Act ("DTPA") claims; (5) violations of the Texas

Securities Act; (6) conversion; (7) TUFTA claims against all Defendants but King and Candy Island; (8) unjust enrichment/disgorgement; (9) money had and received; and (10) civil conspiracy.[3] The Court conducted a six-day trial before taking the matters under advisement. Not all of the Plaintiffs testified, apparently relying on the evidence adduced at trial to support their claims for relief. When the Plaintiffs rested after their presentation of the evidence, the Defendants asked for a directed verdict, asserting that the Plaintiffs had not met their burden of proof. The Court denied the Defendants' oral request for a directed verdict. Thereafter, the Defendants rested without offering any controverting evidence or argument. Trial was concluded on April 18, 2017, and the Court allowed the parties to submit post-trial briefs. The Court advised the parties that it was ordering a transcript of the trial so that the parties could refer to the transcript in their post-trial briefing and the Court could refer to the trial transcripts in issuing its Memorandum Opinion. In ordering the trial transcript, the Court never made any representations to the parties that in doing so it was designating the transcript for purposes of any appeal.

On December 29, 2017, the Court issued its 182-page Memorandum Opinion (ECF No. 369) and Final Judgment (ECF No. 370).[4] ("Judgment") granting the following relief to the prevailing Plaintiffs:[5]

IT IS THEREFORE ORDERED, ADJUDGED and DECREED that Plaintiffs prevail in their claims for common law fraud, fraud in the inducement, fraud in the real estate transaction, and negligent misrepresentation.

IT IS FURTHER ORDERED, ADJUDGED and DECREED that a take-nothing judgment is entered on Plaintiffs' claim for DTPA, violation of the Texas Securities Act, conversion, unjust enrichment, money had and money received, and civil conspiracy.

---

[3] Plaintiffs and Defendants all consented to entry of final order and judgment by the Bankruptcy Court. *See* Joint Pre-Trial Order (ECF No. 290).

[4] The Judgment was later clarified as to some of the Court's findings and ruling on March 29, 2018. (ECF No. 400). Nonetheless, the Judgment has been final since March 29, 2018, and any suggestion that the Judgment is not final is incorrect and lacking in merit.

[5] For purposes of this Order, the term "prevailing Plaintiffs" refers only to those Plaintiffs that obtained a judgment against Defendants.

4

IT IS FURTHER ORDERED, ADJUDGED and DECREED that Plaintiffs' request for actual damages is GRANTED in the following amounts:

| Plaintiff | Damages Awarded |
|---|---|
| Rick Reiley | $149,832.00 |
| Betty Reiley | $111,399.22 |
| Vincent J. Gillette | $324,244.44 |
| Sharon Walls | $350,055.44 |
| Rick Griffey | $210,412.00 |
| Thomas J. Gillette | $379,221.05 |
| DC Oil Company | $430,820.00 |
| James Buford Salmon | $6,008,181.10 |
| David Davalos | $25,361.50 |
| **Total** | **$7,989,526.75** |

IT IS FURTHER ORDERED, ADJUDGED and DECREED that Defendants shall provide an accounting for the following property:

a. Salary and compensation transferred to the Living Trust beginning March 2016.
b. Bentley purchased within the last two years with a purchase price of $189,000.00.
c. Cadillac purchased in May 2013 for $33,705.

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that all other relief not specifically granted herein is DENIED.

(ECF No. 370 at pp. 4-6). Thereafter, the parties engaged in post-trial motions seeking:

    (1) Motion to Alter or Amend Final Judgment (ECF No. 374);

    (2) Motion for Clarification (ECF No. 375); and

    (3) Motion for Reconsideration (ECF No. 376).

The parties filed responses and objections to the competing Motions resulting in the Court issuing Orders denying most of the relief requested. (ECF Nos. 398, 399, and 400). As such, the Court's Judgment was final and appealable because there were no remaining matters for the Court to decide as it related to the trial and determination of its Judgment other than Plaintiffs' request for attorney's fees and costs under Fed. R. Bankr. P. 7054 and Local Rule 7054.

Defendants' Amended Notice of Appeal was filed on April 11, 2018. (ECF No. 407). Transmission of the Record on Appeal to the District Court was entered on May 11, 2018. (ECF

No. 439-1). The Clerk's Notice that was included on the Transmission of the Record on Appeal to the District Court states:

> Please note that the Appellant has not filed with the bankruptcy clerk a designation of the items to be included in the record on appeal and a statement of the issues to be presented as required by Federal Rule of Bankruptcy Procedure 8009(a).

(ECF No. 439-1).

The Court has carefully reviewed the docket in this Adversary Proceeding and notes that between May 11, 2018 (the transmission of the record on appeal) and November 18, 2018 (the date on which the prevailing Plaintiffs requested turnover of assets and appointment of a receiver) (ECF Nos. 481 and 482), Defendants did not file their designation of items to be included in the record on appeal or for a stay pending appeal of the enforcement of the Judgment. Defendants agreed to the appointment of J. Scott Rose as Receiver and turnover of documents and assets to the Receiver. (ECF Nos. 483 and 497). Since Mr. Rose's appointment as Receiver for the prevailing Plaintiffs, the Court's docket consists a variety of litigation relating to the Defendants' failure to comply with post-judgment discovery and satisfy the Judgment.[6] Further, as a result of Defendants' conduct, Mr. Rose has filed an adversary proceeding against Kristi Alfaro and Synergy E&P, LLC to recover fraudulent transfers and related claims for relief. (Adversary No. 19-05001).

On October 1, 2019, the District Court issued its Order Affirming the Bankruptcy Court's Memorandum Opinion and Judgment. (ECF No. 632). The District Court found that, because Defendants/Appellants failed to designate a record on appeal, the District Court could not review the evidence presented to the Bankruptcy Court. As such, the District Court held that it cannot conclude the Bankruptcy Court's findings of fact are clearly erroneous and must affirm the

---

[6] There has also been some ancillary litigation between the prevailing Plaintiffs and Lamont Jefferson, as Receiver, on the collection of monies that has no bearing on the finality of the Judgment or the merits of Defendants' Motion.

decision of the Bankruptcy Court. (ECF No. 632 at pp. 4-5).

Defendants now file this Motion over nineteen months since the Notice of Appeal was filed, seeking to designate items for the record on appeal. Defendants have also filed another Notice of Appeal (ECF No. 640) with a Designation of Contents and Issues for Inclusion in Record on Appeal on the same issues on which the District Court affirmed this Court's Judgment. As explained herein, the Court only has jurisdiction to consider Defendants' Motion.

## DISCUSSION

Defendants argue Federal Rules of Bankruptcy Procedure 8001(a), 8009(e), and 9006(b)(1) apply to their Motion and that the Court has discretion to grant their Motion under the "excusable neglect" standard discussed in *Pioneer Inv. Servs. Co. v. Brunswick Assoc. L.P.*, 507 U.S. 380 (1993). Rule 8003(a)(2) (formerly Rule 8001(a)(2)) states:

> **(2) Effect of Not Taking Other Steps.** An appellant's failure to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for the district court or BAP to act as it considers appropriate, including dismissing the appeal.

Fed. R. Bankr. P. 8003(a)(2) (West 2019). Rule 8009(e)(2) provides:

**(2) Correcting in Other Ways.** If anything material to either party is omitted from or misstated in the record by error or accident, the omission or misstatement may be corrected, and a supplemental record may be certified and transmitted:

   **(A)** on stipulation of the parties;
   **(B)** by the bankruptcy court before or after the record has been forwarded; or
   **(C)** by the court where the appeal is pending.

Fed. R. Bankr. P. 8009(e)(2). Rule 9006(b)(1), which addresses enlargement of time, states:

> **(1) In General**. Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) *on motion made after*

7

> *the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.*

Fed. R. Bankr. P. 9006(b)(1) (emphasis added).

Defendants assert that the Bankruptcy Rules and the Supreme Court's decision in *Pioneer* support their argument that the Court should exercise its discretion and allow the Defendants to designate the record on appeal out of time. The Court does agree that either a bankruptcy court or a district court can grant a motion to designate the record out of time. Further, this Court agrees that the basis for doing so should be under the excusable neglect standard stated in *Pioneer*.

The Supreme Court considered in *Pioneer* whether the failure to file a timely proof of claim constituted excusable neglect and whether courts are permitted under appropriate circumstances to accept late filings. 507 U.S. at 382–83. The "excusable neglect" in *Pioneer* was attributable to counsel's failure to file a timely proof of claim for his client due to "a major and significant disruption" in his professional life. *Id*. at 384. The bankruptcy court denied counsel's motion to permit the filing of a late proof of claim because counsel had proper and timely notice of the bar date for the filing of proofs of claim. *Id*. On appeal, the District Court remanded back to the bankruptcy court to make factual findings based on the following factors:

> (1) whether granting the delay will prejudice the debtor; (2) the length of the delay and its impact on efficient court administration; (3) whether the delay was beyond the reasonable control of the person whose duty it was to perform; (4) whether the creditor acted in good faith; and (5) whether clients should be penalized for their counsel's mistake or neglect." ' " *Id.,* at 158a–159a (quoting *In re Dix,* 95 B.R. 134, 138 (CA9 Bkrtcy. Appellate Panel 1988) (in turn quoting *In re Magouirk,* 693 F.2d 948, 951 (CA9 1982))).

*Id*. at 385. Additionally, the District Court suggested that the Bankruptcy Court "consider whether the failure to comply with the bar date 'resulted from negligence, indifference, or culpable conduct on the part of a moving creditor or its counsel.'" *Id*.

8

On remand, the bankruptcy court again denied counsels' request to file a late filed proof of claim because the bankruptcy court found the reason for the delay was not outside counsel's control, and that the client had the requisite sophistication to understand the purpose of a bar date and the necessity in filing a timely proof of claim, notwithstanding counsel's negligence. *Id*. at 386. The bankruptcy court also concluded that under the circumstances of the case, permitting the filing of late filed proof of claim would render the bar date meaningless. *Id*.

The Sixth Circuit Court of Appeals reversed, finding that the bankruptcy court misapplied the fifth factor under *Dix*, because the client had inquired about pending filing deadlines (including the bar date for filing proofs of claims) and was advised that that none applied. *Id*. The Sixth Circuit reasoned that under the circumstances of the case, it would penalize the client for the error of his counsel. *Id*. (citation omitted). Further, the Sixth Circuit concluded that the "Notice for Meeting of Creditors" was ambiguous and confusing as to the bar date. *Id*. at 387. As such, the Sixth Circuit concluded that it was excusable neglect for counsel to misinterpret the bar date. *Id*.

The Supreme Court granted certiorari to resolve a conflict among the Courts of Appeal and their interpretation of "excusable neglect." *Id*. The Court found that "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Id*. at 388. The Court also reviewed the history of Rule 9006 and its predecessor rules, concluding that courts were entrusted with the authority to accept tardy filings "in accordance with the equities of the situation." *Id*. at 390 (citation omitted). After examining the contours of excusable neglect under the Rules, including Fed. R. Civ. P. 60(b), the Court concluded:

> Because Congress has provided no other guideposts for determining what sorts of neglect will be considered "excusable," we conclude that the determination is at

9

>bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include, as the Court of Appeals found, the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id*. at 395 (citation omitted and internal footnotes omitted).

Nonetheless, the Court also held that penalizing the client for the negligence of counsel is appropriate under the doctrine of agency, because in our system of representative litigation, each party is deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney." *Id*. at 397 (citation omitted). Further, in evaluating excusable neglect, the Court stated that the proper focus is whether the neglect of the litigant and counsel was excusable. *Id*.

Defendants note that the Fifth Circuit has considered whether dismissal of an appeal for failure to follow the Bankruptcy Rules governing bankruptcy appeals is an appropriate remedy. ***In the Matter of CPDC Inc.***, 221 F.3d 693 (5th Cir. 2000). In *CPDC*, appellants filed their notice of appeal and designation of record excerpts but failed to file a statement of issues as required under Rule 8006. *Id*. at 695. Appellees timely filed their own designation of record excerpts and issues on appeal. *Id*. Appellees filed their motion to dismiss the appeal because appellants had not filed a statement of issues on appeal. *Id*. at 696. Appellants filed a response to the motion to dismiss appeal, a statement of the issues on appeal, and a motion for leave to file their issues on appeal. *Id*. Appellants argued that the district court should: "(1) make a finding of bad faith or negligence; (2) consider whether the delay prejudiced other parties; or (3) indicate that it considered the impact of sanctions and available alternative sanctions." *Id*. Appellants also contended that there was no prejudice or evidence of bad faith and that dismissal of the appeal was a remedy of last resort. *Id*.

The district court denied the appellants' motion for leave and motion for rehearing on the motion for leave. *Id*. at 697. The appellants argued that they had met most of the deadlines imposed for filing an appeal under the Bankruptcy Rules and that appellants' mistake in not filing the statement of the issues was inadvertent, not prejudicial, and would be prejudicial for their client. *Id*. The district court found appellants' arguments unavailing and dismissed their appeal. The Fifth Circuit stated that:

> Commentators have explained that the purpose of the record designation requirement is to provide the reviewing court with an adequate basis for evaluating the appellant's claims on appeal. *See* 10 Collier on Bankruptcy ¶ 8006.03[1] (15th ed.2000). The burden of creating an adequate record rests with the appellant, who may not urge an issue on appeal if he has failed to provide the appellate court with the requisite record excerpts. *See id.; Pyramid,* 531 F.2d at 745 (citations omitted). Likewise, the purpose of the statement of issues is "principally to identify the portions of the testimony below that should be included in the record on appeal." Editors' Comment, Norton Bankruptcy Rules Pamphlet 1999–2000 Edition 559 (2d ed. 1999); *In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.,* 104 F.3d 1147, 1148 (9th Cir. 1997) (citing Norton Bankruptcy Rules Pamphlet 1996–97 Edition 594 (1996))))))); 9 Collier on Bankruptcy ¶ 8006–10 (1996)).

*Id*. at 698. Additionally, the Fifth Circuit noted that:

> Rule 8001(a) states that "[a]n appellant's failure to take any step other than timely filing a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the district court ... deems appropriate, which may include dismissal of the appeal." As the language of the rule makes clear, only the failure to file a notice of appeal, which deprives the reviewing court of jurisdiction, mandates dismissal. In contrast, the district court does not invariably dismiss for breaches of other procedural rules, including Rule 8006. *See In re Tampa Chain Co., Inc.,* 835 F.2d 54, 55 (2d Cir. 1987) (per curiam) (citations omitted). Rather, the court must exercise discretion and consider what sanctions are appropriate. Dismissal is a harsh and drastic sanction that is not appropriate in all cases, even though it lies within the district court's discretion. In addition, when, as here, an appeal is dismissed because of an attorney's error, the client is unduly punished for his attorney's mistakes. *See* Editors' Comment, Norton Bankruptcy Rules at 523 ("While counsel for the appellant may be sanctioned, a dismissal of the appeal would unfairly penalize the client."); *In re Hill,* 775 F.2d 1385, 1387 (9th Cir. 1985) (per curiam) (finding an abuse of discretion when "the default was the fault of the attorneys and not the litigant[, y]et the impact of the sanction imposed is primarily against the client").

11

*Id*. at 698–99.

In reversing the district court, the Fifth Circuit found that a dismissal of an appeal on procedural grounds is not generally not warranted. *Id*. (citation omitted). The Fifth Circuit stated that "[d]ismissal is a harsh and drastic sanction that is not appropriate in all cases, even though it lies within the district court's discretion." *Id*. at 699. Further, the Fifth Circuit observed that other courts have found the following factors useful in determining whether an appeal should be dismissed: "district court should (1) make a finding of bad faith or negligence; (2) give appellant notice or opportunity to explain the delay; (3) consider possible prejudicial effect of delay on other parties; and (4) consider the impact of the sanctions and available alternatives; . . . ." *Id*. (citation omitted). The Fifth Circuit concluded that rules infractions are harmless and do not merit dismissal. *Id*. at 699–700. The court also stated that in the absence of evidence of prejudice or "obstinately dilatory conduct," the appeal in *CPDC* should not have been dismissed. *Id*. at 701.

Defendants argue that under the paradigm of *CPDC* and the excusable neglect standard in *Pioneer*, the Motion should be granted. As an initial matter, this Court was affirmed, and the underlying appeal was not dismissed. The District Court did consider the Court's Memorandum Opinion and found that it was appropriate to affirm this Court's Judgment, not dismiss the appeal.

Defendants state that no prejudice will result to Plaintiffs because there will be no additional briefing to be done and the briefs identified the record excerpts that will be used in determining the appeal. As to length of delay, Defendants posit that had the District Court alerted Defendants at the time they filed their Appellant Brief on June 12, 2018, that the record was not designated, the delay would have been only sixty-one days. (Motion at p. 5). Defendants also note that the District Court did not *expressly* notify Appellants that the record was incomplete until September 29, 2019. (*Id*.) (emphasis in the original). Defendants also acknowledge they received

12

the Clerk's e-mail regarding the incomplete record on appeal but concluded that because this Court had ordered the entire transcript, the Appellants could rely upon this Court designating the entire transcript as the record on appeal. (*Id*. at p.5, n. 3). This Court did not designate the trial transcript as the record on appeal because it would have been improper to do so.

Defendants state that there is no bad faith because the failure to designate was an unintentional oversight. (*Id*. at p. 6). Defendants argue that their "unintentional oversight in a procedural rule . . . has caused no harm to anyone." (*Id*. at p. 6) (footnote omitted). Defendants argue that the purpose of the rules of procedure is to allow disputes to be adjudicated and not be stumbling blocks or traps for the unwary. (*Id*. at 7). Defendants maintain that a strict application of a deadline that precludes a case from being considered on appeal requires this court, in the interest of justice, to grant the Motion. (*Id*.). Defendants conclude by stating that everyone in the case thought the trial transcript was in the appellate record and no one will be inconvenienced by the granting of the Motion. (*Id*. at 10).

Plaintiffs oppose Defendants' Motion arguing that any further delay is prejudicial. (ECF No. 642 at p. 5). Defendants argue that in the context of a bankruptcy case, "time is the essence of prejudice to creditors." ***Pyramid Mobile Homes, Inc. v. Speake***, 531 F.2d 743, 746 (5th Cir. 1976). Defendants did not produce a supersedeas bond, and, as such, Receiver Rose has only been able to collect and distribute a limited portion of Defendants' assets while a significant amount of available assets remain uncollectible due to the pending appeal. (ECF No. 642 at p. 7). Further, notwithstanding the involvement of two receivers in this case, Defendants did not file a stay pending appeal and this Court issued Orders compelling Defendants to cooperate in post-judgment discovery and make payments to Plaintiffs. The Fifth Circuit has found prejudice where creditors "are waiting on [the] appeal 'to run its course' before they can receive distributions from the

bankruptcy trustee." ***Kollinger v. Hoyle (In re Kollinger)***, 551 F. App'x 104, 108–09 (5th Cir. 2013).

In ***In re Kollinger***, the appellant's attorney did not receive the court's briefing schedule because he had failed to update his e-mail address with the court. The Fifth Circuit concluded, "[w]hile it is true that some mistakes are excusable, as this court is reluctant to punish the client for the mistakes of his attorney, no excuse justifies failing to file a brief for ten months." ***In re Kollinger***, 551 F. App'x at 108. Plaintiffs argue that the same is true here—Appellants' counsel overlooked several communications from the bankruptcy court indicating that Appellants had not designated the record on appeal, and now attempt to claim that their oversight was "somewhat understandable." (*Id*. at 6). Plaintiffs contend that no excuse, no matter how "somewhat understandable," justifies an eighteen-month delay. (*Id*.). The Court agrees with Plaintiffs that the Defendants' failure to designate the record is not a consequence of the actions of this Court, the District Court, or the Clerk of Court. The burden is on the appellant to designate the record. Fed. R. Bankr. P. 8009.

The Court also agrees with Plaintiffs that the standard under ***Pioneer*** is whether a party acted in good faith and is entitled to a finding of excusable neglect, as opposed to an absence of bad faith. 507 U.S. at 395. Defendants merely state that there has been no showing of bad faith on their part through the course of this adversary proceeding. The Court recognizes that the issue of granting this Motion relates to the Defendants' conduct or negligence in prosecuting their appeal, but it is important to recognize what has transpired in this Adversary Proceeding.

Brian Alfaro and his related entities contacted Plaintiffs about investing in oil and gas properties. Alfaro and his entities identified potential investors who were primarily in their twilight years looking to take their life savings or retirements moneys and invest them to augment their

14

savings. The Court found that Plaintiffs were fraudulently induced into investing their moneys (totaling into the dollar sum of millions) and most, if not all, of their investment ended up in the pocket of Brian Alfaro or his entities. Plaintiffs initiated litigation against the Defendants in the summer of 2015. One of the Alfaro entities was placed into bankruptcy and the other two were placed into receivership. Given the length of time in adjudicating this case, some Plaintiffs have either dropped out of the litigation or died. Plaintiffs are now nearly five years older and have seen little of the return of their moneys. Notably, as a result of this Adversary Proceeding, Brian Alfaro has been indicted for mail fraud[7] and awaits trial while his wife, Kristi Alfaro is being sued[8] in a separate adversary proceeding. Alfaro's assets are subject to criminal forfeiture which imperils Plaintiffs' payment in this case. Further, the Alfaros have become delinquent on their federal income taxes, thereby causing another impediment to prevailing Plaintiffs' ability to collect on the Judgment. As noted herein, this Court has had to appoint J. Scott Rose as Receiver (by agreement of the parties) to effectuate collection of a nearly $8 million Judgment, thereby increasing the costs of the case.

The Court is mindful of the Fifth Circuit's instructions in *CPDC* that procedural deficiencies should not preclude an appeal going forward. The Court is also mindful of what the Fifth Circuit in *CPDC* stated, which is that in the absence of evidence of prejudice or obstinately dilatory conduct, the appeal in *CPDC* should not have been dismissed. 221 F.3d at 701. As discussed herein, the prejudice to Plaintiffs is severe because of what has transpired in this case. Defendants have been obstinately dilatory in their conduct throughout this case.

---

[7] Brian Alfaro's criminal case was filed in the United States District Court for the Western District of Texas, Case No. 5:18-cr-00879-FB.
[8] The adversary proceeding is captioned *J Scott Rose, As Receiver v. Synergy E&P, LLC, Kristi M. Alfaro*, Adv. No. 19-05001-cag.

In applying the *CPDC* factors — (1) make a finding of bad faith or negligence; (2) give appellant notice or opportunity to explain the delay; (3) consider possible prejudicial effect of delay on other parties; and (4) consider the impact of the sanctions and available alternatives — none of the factors favor Defendants. Defendants' conduct has been obstinately dilatory since the inception of this case, and Defendants' attempt to attribute negligence on the part of the Court and Clerk's Office is unavailing. The Clerk's notice to Defendants of their failure to designate the record was clear and unequivocal, and Defendants' inability to understand the Clerk's instructions is counsel's fault. The appeal has been pending for nineteen months, and the granting of this Motion will only result in further delay to Plaintiffs who have been attempting to enforce the Judgment since early 2018. Defendants cannot claim prejudice as a result of their counsel's failures because Defendants have been obstinately dilatory in complying with discovery and following Court orders. In the Court's judgment, there are no sanctions that would apply here because Defendants have resisted on paying on the Judgment, so ordering monetary sanctions will have little effect on the process. The Court cannot conceive of any alternative measures in granting the Motion at this juncture that would not unduly prejudice Plaintiffs given how long the appeal has been pending and the difficulty for Plaintiffs in enforcing the Judgment.

The Court notes that the factors in *CPDC* mirror those of the excusable neglect standard in *Pioneer*, and the Court would note for the reasons explained in this Order that the delay in this case was not beyond the reasonable control of Defendants or their counsel. Moreover, the Defendants are not being penalized for the counsel's failure. Defendants posted no bond or sought any motion for stay pending appeal in this Court or District Court. While it was the Plaintiffs' burden at trial, Defendants put on no evidence or case to rebut Plaintiffs' case. Defendants

themselves have been non responsive to discovery and the Court has threatened contempt proceedings against Defendants.

## CONCLUSION

For the reasons stated herein, the Defendants' Motion to Designate Items to be Included in the Record on Appeal Out of Time (ECF No. 639) is DENIED.

###